IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2000 Session

## STATE OF TENNESSEE v. KEITH SLATER.

**Appeal as of Right from the Circuit Court for Giles County**
**No. 7990     Jim T. Hamilton, Judge**

---

**No. M2000-00486-CCA-R3-CD - Filed May 8, 2001**

---

Following a confession, Keith Slater, the Defendant and Appellant, was indicted by a Giles County Grand Jury for premeditated first-degree murder. The Defendant moved to suppress his confession, but the trial court denied his motion. The Defendant was then tried, convicted and sentenced to life in prison. The Defendant appealed that conviction, and a panel of this Court remanded the case to the trial court for another suppression hearing. The trial court held that hearing and again dismissed the Defendant's suppression motion. Because the evidence does not preponderate against the trial court's findings, we affirm its judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES, J., and NORMA McGEE OGLE, J., joined.

Hershell D. Koger, Pulaski, Tennessee, for appellant, Keith Slater.

Paul G. Summers, Attorney General & Reporter; Marvin E. Clements, Jr., Assistant Attorney General, Nashville, Tennessee; Mike Bottoms, District Attorney General, Lawrenceburg, Tennessee for appellee, State of Tennessee.

**OPINION**

**Factual Background**

The following factual summary was provided by this Court in the initial appeal:

> The victim, Melvin Franklin, was shot twice at his trailer home in the early morning hours of August 31, 1996. One bullet struck him in the back and the other in his right buttock. Kevin Folston, a neighbor, heard the gunshots and saw Kendrick Young's car leaving the scene with its lights off. He did not see defendant in the car; however, shortly

thereafter he saw a man come to the trailer door and then leave. Mattie Louise Gordon, the victim's niece, found Franklin's body several hours later.

The police initially arrested Young for the homicide. In his statement to Investigator John Dickey, Young implicated his roommate, the Defendant, as the shooter. Dickey had Young make a taped phone call to Defendant's workplace. During the conversation, Defendant acknowledged shooting the victim.

Based upon Young's statement and the recorded phone call, Dickey obtained an arrest warrant for defendant which was executed. Once at the station, Defendant was booked, taken into Dickey's office and given his Miranda warnings. Defendant gave a statement outlining his involvement in the shooting, including an admission that he was the triggerman.

State v. Keith Slater, No. 01C01-9709-CC-00435, 1999 WL 32912, at *1 (Tenn. Crim. App. at Nashville, Jan. 27, 1999). The Defendant moved to suppress his statement, arguing that he had asked for his attorney prior to being Mirandized.[1] The trial court denied the Defendant's motion in the following colloquy:

THE COURT: I'm going to overrule that motion. He gave him the Miranda rights. He gave him his Miranda rights at the proper time. I think he followed proper procedure. There is a question in my mind whether he ever asked for an attorney. I don't know. He may have or he may not have. I don't know who to believe.

MR. KOGER [Defense Attorney]: Judge, for the purpose of the record, Your Honor, when you say you are giving us the benefit of the doubt, does that mean that you are making a finding of fact that he did, in fact, ask for an attorney.

THE COURT: No, sir. I'm making a finding of fact that one said yea and one said nay, and I don't know which one to believe. I don't think it makes any difference if he did.

The Defendant was subsequently tried and convicted for premeditated first-degree murder, and he received a life sentence. On appeal, the Defendant claimed, *inter alia,* that his right to counsel had been violated because he had asked for counsel prior to receiving his Miranda waiver, but that police had ignored his requests. This Court held that

Defendant's testimony directly contradicted the testimony of Investigator Dickey. Defendant testified he repeatedly asked for counsel. Dickey testified that defendant said "[n]othing directed toward an attorney." A determination of facts is necessary before this Court can address this issue. The trial court declined to make findings. As an appellate court, we are unable to make findings of fact. Further, under the

---

[1]"Mirandize" is a term of art referring to the requirement, announced in Miranda v. Arizona, that, before any custodial interrogation, a person must be informed of the right to remain silent and the right to counsel. 384 U.S. 436 (1966).

circumstances, it would not be appropriate to simply remand for the entry of findings based upon the previous hearing. Thus, this case must be remanded to the trial court for another hearing on the motion to suppress.

\* \* \* \*

If the trial court determines upon remand that defendant did not request counsel, it shall enter an order accordingly and reinstate the judgment of conviction. Defendant may then appeal that issue to this Court. If the trial court determines that defendant did request counsel, it should grant a new trial and suppress defendant's statement.

Slater, 1999 WL 32912 at \*5.

Following this Court's remand, the trial court held another suppression hearing. At the hearing, three police officers testified for the State. First, Officer John Dickey testified that he and Officers Joe McNairy and Craig Holly went to Kentucky Fried Chicken, the Defendant's place of employment, to arrest the Defendant as a result of their investigation in the murder of Melvin Franklin. Officer Dickey arrested the Defendant and Officer Holly transported the Defendant to the police station. Officer Dickey then informed the Defendant of his Miranda rights, and the Defendant waived those rights, as evidenced by his signature of a waiver form. Officer Dickey then interviewed the Defendant for approximately thirty minutes, and the Defendant admitted his role in the killing. Although Officers Dickey and McNairy remembered the Defendant asking to see his mother, none of the Officers ever heard the Defendant ask for an attorney.

However, the Defendant testified that, following his arrest, he repeatedly asked all three officers to see his mother and Bob Massey, his attorney. The Defendant's mother also testified that she saw her son as he was being transported from the police station to the jail, and that he told her that he had asked to see his attorney.

Following the hearing, the trial court found that the Defendant had not asked for an attorney, and accordingly dismissed the Defendant's motion.

## Suppression

On appeal from the second suppression hearing, the Defendant claims that the trial court's denial of the Defendant's suppression motion was erroneous, because the evidence preponderates against the trial court's finding that the Defendant did not ask for an attorney. As the Tennessee Supreme Court recently reiterated,

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those

findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000) (citing State v. Odom, 928 S.W.2d 18 (Tenn.1996)).

The evidence in this case does not preponderate against the trial court's findings. Although the Defendant testified that he asked for his attorney, three police officers contradicted his testimony. The trial court is in a better position than this Court to judge the witnesses' credibility, demeanor, etc. Because nothing else in the record suggests that the Defendant's right to counsel was violated, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE