# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 2000 Session

## STATE OF TENNESSEE  v.  GUY BINETTE

**Appeal By Permission from the Court of Criminal Appeals**
**Criminal Court for Hamilton County**
**No. 216632     Rebecca Stern, Judge**

---

**No. E1998-00236-SC-R11-CD - Filed October 5, 2000**

---

This is an appeal from the Criminal Court for Hamilton County, which overruled the defendant's motion to suppress all evidence obtained by the State after the defendant was stopped by a police officer on suspicion of driving while under the influence of an intoxicant.  The defendant entered a conditional plea of guilty and reserved for appeal as a dispositive question of law the issue of the lawfulness of the stop.  The Court of Criminal Appeals affirmed the trial court's judgment.  The defendant thereafter sought, and this Court granted, permission to appeal on the following issue: whether reasonable suspicion, based on specific and articulable facts, existed to authorize a stop of the defendant's vehicle.  Having reviewed the record in this case, we hold that the evidence does not support the trial court's finding that the police officer acted with reasonable suspicion when he stopped the defendant.  Accordingly, the judgment of the Court of Criminal Appeals is reversed, the conviction as entered by the trial court is vacated, and the charge of driving while under the influence of an intoxicant is dismissed.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the
### Court of Criminal Appeals Reversed; Case Dismissed

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, and ADOLPHO A. BIRCH, JR., JJ., joined.  JANICE M. HOLDER, J., filed a dissenting opinion.

Jerry S. Sloan, Chattanooga, Tennessee, for the appellant, Guy Binette.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; and Ellen H. Pollack, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

Jerry H. Summers, Chattanooga, Tennessee, for the amicus curiae, Summers & Wyatt, P.C.

**OPINION**

On the evening of February 13, 1997, Guy Binette was driving in Chattanooga, Tennessee, when he was stopped by Officer Gerry Davis of the Chattanooga Police Department. Prior to the stop, Officer Davis followed Binette for several minutes and videotaped Binette's driving. During this time, the officer made several statements that were recorded on the audio portion of the tape regarding what he considered to be driving errors made by Binette. He commented that Binette had "already crossed the yellow line twice," observed that "the vehicle just made a hard swerve," and noted that Binette, at one point, was "running about 60 miles per hour in a 45 mile per hour zone." Based upon his observations, Officer Davis decided to stop Binette and subsequently arrest him.

After he was indicted for driving under the influence of an intoxicant, Binette filed a motion to suppress all evidence gained by the State following the stop. He argued that there was no reasonable suspicion based upon articulable facts for an investigative stop. At the suppression hearing, Binette testified and denied making the driving errors alleged by the officer. Although Officer Davis did not testify at the hearing, the videotaped recording was introduced without objection. Basing its decision solely on the visual portion of the videotape evidence, the court reached the following conclusion:

> [T]here was weaving within the lines, fairly significant weaving about the time the video started up until the time [Binette] turned and the lights were activated, so I do find that there was articulable suspicion for the stop in this case and so I will overrule the motion to suppress.

Pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(iv), Binette entered a conditional plea of guilty and reserved as a dispositive question of law for appeal the issue of the lawfulness of the stop. The plea agreement provided for a sentence of eleven months and twenty-nine days in county jail, suspended after serving forty-eight hours in jail; a fine of $360; a suspension of Binette's driving privileges in Tennessee; and a requirement that Binette attend a DUI school. The court sentenced Binette pursuant to the agreement and issued an order holding the sentence in abeyance pending resolution of Binette's appeal. The Court of Criminal Appeals reviewed the videotape and a majority affirmed the trial court's judgment, finding that Binette did "swerve and weave" within his lane. Binette then sought, and this Court granted, permission to appeal on the following issue: whether reasonable suspicion based on specific and articulable facts existed to authorize a stop of Binette's vehicle.

**DISCUSSION**
*I. Standard of Review*

In State v. Odom, 928 S.W.2d 18 (Tenn. 1996), this Court examined the different standards of appellate review then used by Tennessee courts to evaluate a trial court's findings of fact and conclusions of law on suppression issues. The Court observed that our appellate courts generally applied three different standards of review: preponderance of the evidence, any material evidence, and a standard combining both the preponderance of the evidence and any material evidence

-2-

standards.  See id. at 22-23.  The Court resolved the split among Tennessee courts by adopting the following standard for review of suppression issues:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.  The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.  So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.  In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

Id. at 23.

While Odom is certainly relevant in determining the question now before this Court, the Odom standard presupposes issues of credibility.  We grant trial courts considerable deference on review of these issues because such courts are uniquely positioned to observe the demeanor and conduct of witnesses.  See State v. Moats, 906 S.W.2d 431, 435 (Tenn. 1995).  But when a court's findings of fact at a suppression hearing are based solely on evidence that does not involve issues of credibility, such as the videotape evidence in this case, the rationale underlying a more deferential standard of review is not implicated.  Consequently, we must determine the standard of review for a trial court's finding of fact on a motion to suppress when they are based on evidence that does not involve issues of credibility.

In the context of workers' compensation cases, this Court has held that "where the issues involve expert medical testimony and all the medical proof is contained in the record by deposition . . . then this Court may draw its own conclusions about the weight and credibility of that testimony."  Krick v. City of Lawrenceburg, 945 S.W.2d 709, 712 (Tenn. 1997).  The rationale allowing an appellate court to review such evidence de novo without a presumption of correctness is clear: the reviewing court is in the same position as the trial court and is just as capable of reviewing the evidence.  See id.  Similarly, when a trial court's findings of fact on a motion to suppress are based solely on evidence that does not involve issues of credibility, appellate courts are just as capable to review the evidence and draw their own conclusions.  Accordingly, we hold that when a trial court's findings of fact at a suppression hearing are based on evidence that does not involve issues of credibility, a reviewing court must examine the record de novo without a presumption of correctness.[1]

## II. Application of Standard of Review

---

[1] Our holding is limited to the facts and issue presented in this appeal.  We hereby expressly reserve decision on the issue of the proper standard of appellate review of a videotaped trial record until that issue is squarely presented.

We now turn our attention to the precise issue before the Court: whether specific and articulable facts existed to authorize a stop of Binette's vehicle.  The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause."  Article I, section 7 of the Tennessee Constitution similarly prohibits unreasonable searches and seizures and is identical in intent and purpose with the Fourth Amendment.  See Sneed v. State, 423 S.W.2d 857, 860 (Tenn. 1968).  "Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement."  State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

One exception to the warrant requirement exists when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed.  See Terry v. Ohio, 392 U.S. 1, 20-21 (1968); State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997).  Upon turning on the blue lights of a vehicle, a police officer has clearly initiated a stop and has seized the subject of the stop within the meaning of the Fourth Amendment of the Federal Constitution and Article I, section 7 of the Tennessee Constitution.  See State v. Pull[e]y, 863 S.W.2d 29, 30 (Tenn. 1993).  Thus, in order for the stop in this case to be constitutionally valid, at the time that Officer Davis turned on his vehicle's blue lights, he must have had reasonable suspicion, supported by specific and articulable facts, that Binette had committed, or was about to commit, a criminal offense.

Reasonable suspicion is a particularized and objective basis for suspecting the subject of a stop of criminal activity, see Ornelas v. United States, 517 U.S. 690, 696 (1996), and it is determined by considering the totality of the circumstances surrounding the stop, see Alabama v. White, 496 U.S. 325, 330 (1990).  In this case, the State argues that the following specific and articulable facts give rise to reasonable suspicion that Binette was driving a vehicle while under the influence of an intoxicant:

> (1) the defendant was traveling on a road in Hamilton County, Tennessee at about midnight on February 13, 1997; (2) it was not raining, and the weather was not inclement; (3) there was no construction and no traffic of any consequence; (4) the videotape shows that] in a two minute period of time, the defendant's car appears to touch the center line at least four times . . . [(5)] [the videotape also shows that] the defendant's car made a sudden swerve within his own lane.

According to the State, the first three facts, which are undisputed, eliminate other alternative explanations for the erratic driving it attributes to Binette.  The State argues that "[w]hen a car weaves back and forth several times in its own lane late at night in clear weather with little traffic and no construction, a trained police officer may infer from those facts that the driver may be driving while intoxicated."  However, in each of the cases cited by the State in which other courts have found probable cause to stop a driver who was weaving within a single lane of traffic, the police

officer observed the defendant weave in a pronounced manner to the outside and inside boundaries of the lane.[2]

We have viewed the videotape, and we have listened to the officer's recorded narration of his observations. Equally as capable as the trial court of reviewing this evidence, we find that the officer's statements, made at the time of the investigation, are clearly contradicted by the visual portion of the tape, and thus, we give them little weight in our de novo review of the evidence. We simply do not find any evidence of pronounced weaving or hard swerving by Binette, and we disagree with the State's contention that the videotape shows that Binette touched the center line at least four times. We note that a majority of the Court of Criminal Appeals, after viewing the videotape, found only two instances in which Binette's vehicle touched the center line. The majority and dissenting opinions from that court agreed that the "weaving" was entirely within his lane of travel and was not exaggerated. We agree with the Court of Criminal Appeals that any movement Binette's vehicle made within his own lane of travel was clearly not exaggerated. The number of times that a vehicle touches the center line or drifts within in a lane is not dispositive of the issue before this Court. Rather, as we have previously noted, a court must consider the totality of the circumstances in determining whether reasonable suspicion was present at the time a stop was initiated.

Prior to the initiation of the stop, the videotape shows Binette proceeding correctly through a number of intersections and stop lights and maintaining appropriate distances behind the vehicles that he was following. Moreover, Binette was traveling along a winding road–a more difficult course on which to travel in a straight line. Contrary to what Officer Davis stated that he observed, we find that Binette did not violate any rules of the road during the period in which the video camera recorded his driving. The video portion of the recording does not reflect that the vehicle was traveling at an excessive speed. Admittedly, Binette occasionally drifted from the center of the lane. Our legislature has stated that "[w]henever any roadway has been divided into two (2) or more clearly marked lanes for traffic, . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane . . . ." Tenn. Code Ann. § 55-8-123(1)(1998) (emphasis added). "[I]f failure to follow a perfect vector down the highway . . . [was] sufficient reason[] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." United States v. Lyons, 7 F.3d 973, 976 (10th Cir. 1993). Likewise, in his dissenting

---

[2] See State v. Kvam, 336 N.W.2d 525, 526 (Minn. 1983) (finding probable cause where police officer saw defendant's car "pull out of the parking lot . . . 'kind of fast' and make a 'very wide' right turn onto Highway 3 southbound . . . saw another southbound car, a Rabbit, pull over onto the shoulder to avoid being hit and saw defendant's car pull completely into the northbound lane, where it remained for about a block before getting back into the appropriate southbound lane . . . [and observed defendant's vehicle] 'weaving within its lane'"); see also People v. Perez, 221 Cal. Rptr. 776, 776 (Cal. Ct. App. 1985) (finding probable cause where police officer saw "pronounced weaving" to the left and right for about three quarters of a mile); State v. Tompkins, 507 N.W.2d 736, 737 (Iowa Ct. App. 1993) (finding probable cause where police officer "observed defendant's car weave from the center line to the right side boundary several times"); State v. Field, 847 P.2d 1280, 1281-82 (Kan. 1993) (finding probable cause where defendant's vehicle "was weaving from the middle of its lane to the outside of the lane, to the inside of the lane and back to the middle" within one block and weave three additional times over three more blocks).

opinion in the court below, Judge Jerry L. Smith emphasized the danger of finding reasonable suspicion under these facts:

> In essence . . . [finding reasonable suspicion] creates a "stop at will" standard for police since it is the rare motorist indeed who can travel for several miles without occasionally varying speed unnecessarily, moving laterally from time to time in the motorist[']s own lane, nearing the center line or shoulder[,] or exhibiting some small imperfection in his or her driving.

State v. Binette, No. 03C01-9802-CR-0075, at 7 n.2 (Tenn. Crim. App. June 28, 1999) (filed at Knoxville) (Smith, J., dissenting).

The Court of Criminal Appeals has recently refused to find that an officer had reasonable suspicion to stop a driver whose driving it found not to be erratic or in any way improper. Explaining its rationale, the court stated, "We are not willing to ignore the guarantees of the Fourth Amendment and indirectly hold that '[t]he word 'automobile' is . . . a talisman in whose presence the Fourth Amendment fades away and disappears.'" State v. Smith, 21 S.W.3d 251 (Tenn. Crim. App. 1999) (citing Coolidge v. New Hampshire, 403 U.S. 443, 461-62 (1971)). We agree.

In conjunction with our findings based on the videotape, Binette testified that he did not make the driving errors alleged by the officer. Although we give strong deference to the conclusions of the trial court when it weighs and considers a witness's live, in-court testimony, there is no explicit indication in the record concerning whether the trial judge found Binette to be credible. Indeed, absolutely no reference was made to Binette's testimony; the trial judge relied entirely on her own perceptions of what was depicted on the videotape. Thus, even were we to assume that Binette was not credible, but see Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 775 (Tenn. 2000) (assuming the credibility of a witness in part based on the absence of trial judge's findings on the record), we nevertheless find that the evidence does not support the trial court's findings, and we thus reverse the trial court's determination that the officer had reasonable suspicion to stop Binette.

## CONCLUSION

In summary, based on our review of the entire record of the suppression hearing, we hold that the evidence does not support the trial court's finding that Officer Davis had reasonable suspicion to stop Binette for driving while under the influence of an intoxicant. While Binette did move laterally at times within his lane while operating his vehicle, we find that his movement was not pronounced, and therefore did not give rise to reasonable suspicion that he was under the influence of an intoxicant. Accordingly, the judgments of the trial court and the Court of Criminal Appeals denying Binette's motion to suppress are reversed, the conviction as entered by the trial court is vacated, and the charge of driving while under the influence of an intoxicant is dismissed.

Costs of this appeal are assessed to the State of Tennessee.

_____
WILLIAM M. BARKER, JUSTICE