IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 17, 2002 Session

## STATE OF TENNESSEE v. JEROME D. MANNING

**Appeal from the Criminal Court for Sumner County**
**No. 376-2001     Jane W. Wheatcraft, Judge**

_____

**No. M2001-03128-CCA-R3-CD - Filed December 20, 2002**

_____

Jerome D. Manning appeals a certified question of law regarding a police officer's stop of him which resulted in his arrest for illegal possession of narcotics. Because we agree with the trial court that reasonable suspicion supported by specific and articulable facts existed for the stop and that the scope and duration of the detention were not unreasonable, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Kenneth Quillen, Nashville, Tennessee (on appeal); and Dale M. Quillen, Nashville, Tennessee (at trial), for the Appellant, Jerome D. Manning.

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Dee Gay, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On October 15, 2001, the defendant, Jerome D. Manning, pleaded guilty in the Sumner County Criminal Court to a Class B felony drug offense, possession of more than one-half gram of cocaine with intent to sell. *See* Tenn. Code Ann. § 39-17-417(a)(4), (c)(1) (Supp. 2001). He was sentenced on December 10, 2001, to a term of eight years to be served on community corrections and was fined $2,000. With the state's and trial court's agreement, the defendant specifically reserved the right to appeal a dispositive question of law pursuant to Criminal Procedure Rule 37(b)(2)(1). Tenn. R. Crim. P. 37(b)(2)(1) ("An appeal lies . . . from any judgment of conviction . . . [u]pon a plea of guilty . . . if . . . Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case."). As recited in the judgment of conviction, the issue reserved for review is "whether the initial stop of the [defendant's] vehicle was supported

by a reasonable suspicion based on specific and articulable facts and/or whether the detention and seizure from the [defendant] was excessive."[1] We conclude that the certified question was properly reserved. We also conclude that the stop of the defendant's automobile was constitutionally permissible and that the evidence seized as a result of the detention should not be suppressed.

Before us is a transcript of the defendant's April 25, 2001, preliminary hearing and partial transcripts of the July 26 and August 3, 2001, hearings on his suppression motion. At the preliminary hearing, Hendersonville police officer Brian Weeks testified that on August 19, 2000, he was assigned to the midnight patrol shift. He was traveling on Sanders Ferry Road, and as he approached Drakes Creek Marina, he pulled into the parking lot of Mr. Bill's Catfish Restaurant across from the marina. Officer Weeks turned around in the parking lot and saw a Lexus automobile pull out of the marina and head toward Main Street.

Officer Weeks testified that he followed the Lexus. Although the Lexus was traveling within the speed limit, it crossed the center line of the highway twice and crossed the outside line once onto the gravel shoulder. On both occasions when the Lexus crossed the center line, Officer Weeks said that the "majority of the car" was on the wrong side of the road. Because the lake bounded the narrow road on both sides, Officer Weeks waited until there was a safe section of the highway, at Mallard's Restaurant, before stopping the Lexus. Officer Weeks said that it was his intention to administer field sobriety tests to the driver of the Lexus.

Officer Weeks said that he approached the car and determined that the defendant was the driver and lone occupant. Officer Weeks asked the defendant if he had been drinking, and the defendant responded that he had not. Officer Weeks then inquired as to the reason for the defendant's erratic driving and noticed that the defendant kept his right hand in between the seats and out of sight. Officer Weeks asked the defendant twice to show his right hand. The defendant appeared "bewildered" and kept saying, "Huh?" After the third request, Officer Weeks testified that he stepped back and started to unholster his weapon because he "didn't know if [the defendant] had a weapon or anything else in the hand." At that point, the defendant raised his right hand and was holding what appeared to Officer Weeks to be a plastic bag containing crack cocaine. The defendant slowly started to hand over the item, and the officer "reached in and grabbed it from his hand."

Officer Weeks again stepped back and called for a backup unit. The defendant put the Lexus into drive and left at a high rate of speed. Officer Weeks pursued the defendant, who was traveling at times in excess of 110 miles per hour and passing cars on the wrong side of the road. During the chase, a tire on Officer Weeks's vehicle went flat, and he had to stop his pursuit. The defendant was subsequently arrested in Nashville and transported to the Hendersonville Police Department. The defendant admitted that the plastic bag contained crack cocaine, and he claimed that he bought it on the street in Nashville. The defendant also admitted having sold crack cocaine

---

[1] On appeal, the defendant attempted to expand the scope of issues certified for our review to include a claim that the officer who stopped him was engaged in unlawful tailgating designed to intimidate the defendant. We decline to consider this claim.

but not on a regular basis. The police seized approximately $9,700 in cash from the trunk of the defendant's automobile.

Officer Weeks testified again to the same facts at the hearing on the defendant's suppression motion. Regarding money seized from the defendant, Officer Weeks recalled that in addition to the cash in the Lexus, approximately $1,100 was found on the defendant's person by a correctional intake officer. The defense questioned Officer Weeks about the Department of Transportation's student manual dealing with DUI detection standards and had the officer read from a one-page flow chart in the manual that outlined three detection phases: (1) vehicle in motion, (2) personal contact, and (3) prearrest screening. Officer Weeks testified that he was not familiar with the manual but that he had been trained in conducting driving-under-the-influence stops. The defense pointed out that the officer did not issue a citation to the defendant; Officer Weeks agreed explaining, "I didn't have a chance. He drove off."

The defense elicited from Officer Weeks that the defendant, a 20 year-old African-American, was driving a "rather expensive" automobile. Although Officer Weeks did not know the percentage figures for the African-American population in Hendersonville, he agreed that few African-Americans lived in the area. Nevertheless, Officer Weeks also insisted that he did not determine the defendant's race until he approached the Lexus after the stop.

The defendant testified at the suppression hearing that he was pulling out of the marina when he first spotted Officer Weeks. Shortly thereafter, the defendant observed a police vehicle following behind him at a distance of approximately one and one-half car lengths. The defendant said that the police car followed him for 1.4 miles before initiating the stop. The defendant recalled that Officer Weeks asked him if he had been drinking. The defendant testified that he had not been drinking and so told the officer. The officer, according to the defendant, then demanded, "Let me see your hands," three times. The defendant saw the officer reaching for his firearm at which time the defendant said that he pulled up his hands. The defendant was holding a packet in his hand, and he testified that the officer "grabbed" it from him. The defendant said that he was fearful of being shot so he "drove off."

The defendant flatly denied either crossing over the center line twice or crossing onto the gravel shoulder of the road.

The trial court took the matter under advisement and issued a Memorandum Opinion and Order denying the motion to suppress. The trial court credited the officer's testimony that the Lexus veered over the center line twice and once onto the gravel shoulder and the officer's account of the defendant's behavior when asked to show his right hand. Considering the defendant's erratic driving, which suggested an intoxicated driver, and the dangerous road conditions that existed, the trial court concluded that Officer Weeks had reasonable suspicion to stop the defendant's vehicle. The trial court further concluded that the scope and duration of the stop were not unreasonable. "The stop," the trial court observed, "was extremely short." The officer asked the defendant two questions, demanded three times to see the defendant's right hand, and seized the drugs. The

encounter was cut short when the defendant then immediately fled. Last, the demands to see the defendant's hidden hand were justified, according to the trial court, because of the officer's safety concerns.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. *Odom*, 928 S.W.2d at 23; *see also* Tenn. R. App. P. 13(d). The application of the law to the facts, however, is a question that an appellate court reviews *de novo*. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). We review the issue in the present appeal with these standards in mind.

Both the United States and Tennessee Constitutions protect against unreasonable searches and seizures. U.S. Const. amend IV; Tenn. Const. art. 1, § 7. A search or seizure conducted without a warrant is presumed unreasonable, thereby requiring the state to prove by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973); *State v. Simpson*, 968 S.W.2d 776, 780 (Tenn. 1998).

One exception to the warrant requirement exists when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. *See Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 1880 (1968); *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997). Probable cause is not required for such an "investigatory stop." *Terry v. Ohio*, 392 U.S. at 21, 88 S. Ct. at 1880. The leading case, *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401 (1979), established that generally the police are entitled to stop a car briefly for investigative purposes if they have a reasonable suspicion, based upon specific and articulable facts, that an offense is being or is about to be committed. A reviewing court then must take into account the totality of circumstances when analyzing whether an officer's suspicion is "reasonable" and supported by specific and articulable facts. *State v. Yeargan*, 958 S.W.2d 626, 632 (Tenn. 1997). Circumstances relevant to that determination include, but are not limited to, the officer's "personal objective observations" and "the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him – inferences and deductions that might well elude an untrained person." *Keith*, 978 S.W.2d at 867.

There is no quarrel that the defendant was "seized" for constitutional purposes when Officer Weeks stopped the Lexus at Mallard's Restaurant. The question becomes whether the stop was constitutional because it was bottomed on a reasonable suspicion by Officer Weeks, supported by specific and articulable facts.

-4-

At the hearing on his suppression motion, the defendant insisted that he never crossed over the center line and never crossed over the white line onto the gravel shoulder of the road. Having lost that credibility dispute to Officer Weeks, the defendant abandons that argument on appeal. Instead, he seeks to persuade that less than perfect operation of a motor vehicle is not suspicious and does not give rise to reasonable suspicion for a stop.

Here, however, the officer observed more than a garden variety of imperfect driving. The defendant's vehicle twice crossed the center line into the opposite lane of travel and also crossed onto the right gravel shoulder of the narrow road. According to Officer Weeks, on both occasions when the Lexus crossed the center line, the "majority of the car" was on the wrong side of the road. These circumstances distinguish this case from what the supreme court in *Binette* regarded as minor imperfections in driving. *Binette*, 33 S.W.3d at 218-20. *See, e.g.*, *State v. Chris A. Jefferson*, No. E2000-00429-CCA-R3-CD (Tenn. Crim. App., Knoxville, Dec. 8, 2000) (reasonable suspicion supported traffic stop when defendant observed "cutting a 'z' continuously" from dotted center line to shoulder fog line); *State v. Don Palmer Black*, No. 03C01-9812-CR-00424 (Tenn. Crim. App., Knoxville, Dec. 29, 1999) (traffic stop upheld when officer observed defendant weaving within lane and swerving twice to the right almost hitting the curb); *State v. Floyd Lee Williamson*, No. 02C01-9803-CC-00085 (Tenn. Crim. App., Jackson, Apr. 1, 1999) (reasonable suspicion existed when officer observed vehicle drift back and forth within the lane, cross the center line at least once, and drive at slightly more than one-half the speed limit).

Officer Weeks' investigatory stop in this case, we conclude, violated no constitutional principles or guarantees.

Next, we address the defendant's complaint that even if the initial stop was lawful, the duration and scope of the seizure exceeded reasonable limits. The constitutional parameters of an encounter between law enforcement and a motorist who has been stopped were succinctly set forth in *State v. Troxell*, 78 S.W.3d 866 (Tenn. 2002).

> Because a traffic stop is an investigatory stop, the officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place," *Terry v Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed.2d 889 (1968), and the detention "must be temporary and last no longer than necessary to effectuate the purpose of the stop," *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed.2d 229 (1983); *State v England* 19 S.W.3d at 767-68. Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. *Florida v. Royer*, 460 U.S. at 500, 103 S. Ct. at 1326. As this Court has said, "the proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *State v. Simpson*, 968 S.W.2d at 783 (citation omitted). Otherwise a

reasonable traffic stop can become unreasonable and constitutionally invalid "if the time, manner or scope of the investigation exceeds the proper parameters."

*Id*. at 871.

The defendant in this case would have us hold that the initial detention should have terminated once Officer Weeks observed the defendant's face and received a negative response to the question whether the defendant had been drinking. The defendant writes in his brief that "Officer Weeks had no reason to ask defendant to exit the vehicle and therefore continued detention to administer field sobriety tests was unreasonable."

In the first place, Officer Weeks did not ask the defendant to exit his vehicle. Officer Weeks asked the defendant to show his right hand. Officer Weeks may well have intended to ask the defendant to step out of the Lexus, but before Officer Weeks had an opportunity to do so, the defendant drove away, thereby terminating the encounter.

Second, Officer Weeks was still in the midst of investigating the defendant's sobriety when the defendant himself terminated the detention. The purpose of the stop, in other words, had not been effectuated. Office Weeks reasonably needed more than a monosyllabic response to his question about drinking and a brief view of the defendant's countenance to make an informed decision that further investigation was unnecessary. As the investigation was incomplete, we never reach the question whether the duration and scope of the detention was unreasonable.

Finally, the safety of the officer performing the traffic stop is a legitimate consideration. Officers need not jeopardize their own safety for the sake of expediting a legitimate investigation. *See Knowles v. Iowa*, 525 U.S. 113, 119 S. Ct. 484 (1998) (for the purpose of officer safety, both the driver and passenger may be ordered out of a vehicle in the course of a routine traffic stop); *Terry v. Ohio*, 392 U.S. at 23-26, 88 S. Ct. at 1881-82 (limited pat-down search permissible upon a showing that such action is justified to protect the officer). Officer Weeks testified that he was concerned that the defendant may have been concealing a gun or other weapon in his right hand. Officer Weeks would have been foolhardy to continue his investigation of the defendant's sobriety before ensuring that the defendant did not pose an immediate threat.

For the reasons we have discussed, we conclude that the trial court correctly denied the defendant's motion to suppress. The judgment of the trial court, accordingly, is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE