# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 28, 2003 Session Heard at Cookeville

## STATE OF TENNESSEE v. GONZALO MORAN GARCIA

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 99-C-2220     Steve Dozier, Judge**

---

**No. M2000-01760-SC-R11-CD - Filed October 1, 2003**

---

JANICE M. HOLDER, J., dissenting.


The standard for reviewing a trial court's findings of fact in a suppression hearing is governed by our opinion in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). In Odom, we held that a trial court's findings of fact will be upheld unless the evidence preponderates otherwise. See 928 S.W.2d at 23. The majority purports to apply this standard in reviewing the trial court's conclusion that Officer Kohl's investigatory stop was based on reasonable suspicion. However, the majority opinion's reasonable suspicion analysis suggests differently.

Instead of giving deference to the trial court's findings as Odom requires, the majority independently viewed the videotape, reviewed the transcript of the testimony of Officer Kohl, and then substituted its own findings for those of the trial court. In so doing, the majority appears to be applying the de novo standard that was established in State v. Binette, 33 S.W.3d 215 (Tenn. 2000), and applied in this case by the Court of Criminal Appeals. While disavowing the Court of Criminal Appeals' use of this standard, the majority proceeds to subtly question the trial court's findings and ultimately concludes that Officer Kohl did not have reasonable suspicion to stop Garcia as a matter of law.

In Binette, the majority relied upon the "deposition rule" articulated in workers' compensation cases and adopted a new de novo standard to review evidence that the majority believed was limited to videotaped evidence. See 33 S.W.3d at 217. The rationale behind the holding in Binette was that appellate courts are just as capable as trial courts to review such evidence and draw their own conclusions when no issues of credibility exist. See id. I disagreed with this rationale and with the standard adopted in Binette. See id. at 220-22 (Holder, J. dissenting). I disagree with applying such a standard to what is clearly a combination of live-witness and videotape evidence.

Applying a standard other than that which this Court espoused in <u>Odom</u> is not only unnecessary, it is dangerous. As <u>Binette</u> and the present case show, a standard of review that fails to afford a presumption of correctness to the trial court allows the majority's interpretation of the events to ultimately trump the police officer's recollection of those events and the trial court's findings of fact. In my opinion, the videotape hardly presents a crystal clear view of the events captured. The picture is dark, indistinct, and mainly consists of diffused light. The images on the screen are further obscured by shadows created by the overhead streetlights. As such, I question how well the videotape depicts what Officer Kohl actually saw. Moreover, I continue to adhere to my opinion that trial courts are in a better position than appellate courts to make findings of fact, irrespective of the form of the evidence, and that the standard applied by the majority in this case essentially establishes a "last in line is right" rule. By substituting its own interpretation of the events for the trial court's findings, the majority exceeded its proper role.

I would hold that an application of the <u>Odom</u> standard establishes that the officer in this case had reasonable suspicion to stop Garcia. Reasonable suspicion is determined by considering the totality of the circumstances surrounding the stop. <u>See</u> <u>Binette</u>, 33 S.W.3d at 218; <u>see also</u> <u>State v. Bridges</u>, 963 S.W.2d 487, 492 (Tenn. 1997). In the present case, Officer Kohl stopped Garcia on Interstate 24 at approximately 11:00 p.m. Officer Kohl testified at the suppression hearing that she observed Garcia weave multiple times before she decided to stop him. The trial court found Officer Kohl's testimony credible and found that the videotape supported her testimony. The trial court also stated that the videotape showed Garcia "noticeably swerve[]" on at least three occasions. In addition, at trial, Officer Kohl testified that she noticed that Garcia was swerving "in a continual manner." I would conclude that the evidence does not preponderate against the trial court's findings. In <u>Binette</u>, the defendant had to negotiate intersections, stop lights, and winding roads. Garcia, on the other hand, was driving on a straight interstate. Moreover, considerable traffic was on the interstate around Garcia, which "amplified the situation" according to the trial court. Binette was on a road with very little traffic. Viewed under a totality of the circumstances standard, I would hold that the noticeable and continual weaving in this case constituted reasonable suspicion to stop Garcia under <u>Binette</u>.

Furthermore, I would hold that Officer Kohl's investigative detention of Garcia was reasonable. Traffic stops are investigative stops. <u>See</u> <u>State v. Troxell</u>, 78 S.W.3d 866, 871 (Tenn. 2002). Consequently, a police officer's actions in conducting such a stop cannot exceed the scope of the circumstances that justified the stop. <u>Id.</u> A reasonable traffic stop can become unreasonable if the "'time, manner or scope of the investigation exceeds the proper parameters.'" <u>Id.</u> (quoting <u>United States v. Childs</u>, 256 F.3d 559, 564 (7th Cir. 2001)).

In assessing whether a detention is excessive in length, a court must determine if "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." <u>State v. Simpson</u>, 968 S.W.2d 776, 783 (Tenn. 1998). In this case, less than fifteen minutes elapsed from the time Officer Kohl stopped Garcia to the time she handed Garcia his driver's license, the vehicle registration, and the warning citation and told him that the stop was complete. Accordingly, the length of the investigation was not excessive. <u>See</u> <u>Weaver v. Shadoan</u>,

340 F.3d 398, 408-09 (6th Cir. 2003) (concluding that a ten to fifteen minute detention was not unlawful); United States v. Wellman, 185 F.3d 651, 656-57 (6th Cir. 1999) (indicating that a fifteen to twenty minute detention was not unlawful).

A detention also may be unreasonable if the investigation's scope exceeds the purpose of the traffic stop. Once the purpose of the initial stop is accomplished, an officer may not detain the motorist further unless the stop yields the necessary reasonable suspicion to justify extending the detention. State v. England, 19 S.W.3d 762, 767 (Tenn. 2000). "[I]nconsistencies in information given to an officer during a traffic stop may give rise to reasonable suspicion of criminal activity." United States v. Smith, 263 F.3d 571, 592 (6th Cir. 2001). Officer Kohl's questions concerning Garcia's destination followed logically from her earlier inquiries regarding his state of intoxication or fatigue and did not exceed the scope of the stop. However, once Officer Kohl determined that Garcia was tired but not intoxicated, the investigation should have ended unless the officer had reasonable suspicion to justify extending the stop. Officer Kohl testified that she was satisfied that Garcia was not intoxicated after they discussed his destination and he handed over his driver's license. Nevertheless, Garcia's evasiveness regarding his destination along with his implausible statement that he had left Los Angeles the previous day gave Officer Kohl reasonable suspicion to continue her investigation into the ownership of the vehicle. Garcia's inconsistent answers to Officer Kohl's subsequent questions along with his travel plans and the litter that was strewn throughout the inside of the vehicle provided Officer Kohl with reasonable suspicion to extend the detention further. Based on these circumstances, I would hold that Officer Kohl's investigative detention of Garcia was reasonable.

Because I would conclude that the initial stop and continued detention of Garcia were based upon reasonable suspicion, I disagree with the majority's holding that Garcia's constitutional rights were violated and that Garcia's consent to search was an exploitation of a prior unlawful seizure. Therefore, I must respectfully dissent.

_____
JANICE M. HOLDER, JUSTICE