IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 24, 2003 Session

## STATE OF TENNESSEE v. KEVIN D. GUFFEY

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 237294      Rebecca Stern, Judge**

_____

**No. E2002-02527-CCA-R3-CD**
**November 19, 2003**
_____

The appellant, Kevin D. Guffey, pled guilty in the Hamilton County Criminal Court to driving under the influence (DUI), a Class A misdemeanor. The trial court sentenced the appellant to eleven months and twenty-nine days in the county workhouse, to be suspended after serving forty-eight hours, and imposed a fine in the amount of three hundred sixty dollars ($360). The trial court also suspended the appellant's driver's license for one year and ordered the appellant to attend "DUI school." Pursuant to the plea agreement, the appellant reserved the right to appeal a certified question of law challenging the trial court's denial of his motion to suppress. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Bryan H. Hoss, Lee Davis, and David W. Wallace, Chattanooga, Tennessee, for the appellant, Kevin D. Guffey.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William H. Cox, District Attorney General; and Mary Sullivan Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I.  Factual Background**

At the suppression hearing, Soddy-Daisy Police Officer Jerry Workman testified that in the early morning hours of January 1, 2001, he was on "DUI patrol." He testified that he parked his patrol car on the shoulder of the northbound lane of Highway 27, approximately one mile from the Morrison Springs Road exit. Officer Workman related that shortly after midnight, "a vehicle in the far right lane, close to the [shoulder] where I was [parked], almost hit my patrol car." Officer

Workman testified that the vehicle proceeded north and he "started taking off after it." Officer Workman explained,

> This particular car crossed over into the shoulder of the road again, half of the car did. Blue lights, siren was activated. The vehicle failed to stop. I radioed in. . . . [T]he other cars that were working this DUI program came and several officers was at the end of the exit ramp and blocked the car in on Morrison Springs Road.

On cross-examination, Officer Workman acknowledged that the area where he had parked on the side of the road was "very dark," and his patrol car was not visible to oncoming traffic. The officer further conceded that the shoulder of the road at that location was approximately "a patrol car width wide." However, Officer Workman reiterated that the appellant's vehicle almost struck his patrol car, crossed over the solid line onto the shoulder in front of Officer Workman's patrol car, and failed to stop when Officer Workman activated his blue lights and siren.

> Based upon the foregoing, the trial court denied the appellant's motion to suppress, stating,
> From the testimony of the officer, here is how I heard the facts. [Officer Workman] was sitting over in the dark, off on the shoulder, and the [appellant] came by, crossed over the shoulder line. [Officer Workman] saw [the appellant cross over the shoulder] two more times before [reaching] the exit ramp. The way I took the proof was at least he saw it one more time almost immediately and then activated his blue lights. . . . I find there is reasonable and articulable suspicion for [Officer Workman] to activate his blue lights and I find that's when the stop occurred . . . . Motion to suppress is overruled.

Upon the trial court's denial of his motion to suppress, the appellant pled guilty to DUI. Tenn. Code Ann. § 55-10-401 (1998). Thereafter, the trial court sentenced the appellant to eleven months and twenty-nine days in the county workhouse, to be suspended after service of forty-eight hours, and imposed a fine of three hundred sixty dollars ($360). The trial court also suspended the appellant's driver's license for one year and ordered the appellant to attend "DUI school." Pursuant to the plea agreement, the appellant reserved the right to appeal a certified question of law challenging the trial court's denial of his motion to suppress. See Tenn. R. Crim. P. 37(b)(2)(i). On appeal, the appellant contends that "there was no reasonable or articulable suspicion to stop the [appellant's] car."

## II. Analysis

The trial court's findings of fact in a suppression hearing will be upheld on appeal unless the evidence preponderates against those findings. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in

the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.

Id. However, the application of the law to the trial court's findings of fact is a question of law subject to de novo review. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the Fourth Amendment to the United States Constitution and Article 1, section 7 of the Tennessee Constitution prohibit unreasonable searches and seizures by law enforcement officers. The purpose of the Fourth Amendment and Article 1, section 7 is to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Munn, 56 S.W.3d 486, 494 (Tenn. 2001) (quoting State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997)); see also State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). Under both constitutions, "'a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (quoting Yeargan, 958 S.W.2d at 629); see also Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971).

One such exception to the warrant requirement exists when a law enforcement officer conducts an investigatory stop based upon a reasonable suspicion supported by specific and articulable facts that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); see also State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). Our supreme court has held that "upon turning on the blue lights of a vehicle, a police officer has clearly initiated a stop and has seized the subject of the stop with in the meaning of the Fourth Amendment of the Federal Constitution and Article I, section 7 of the Tennessee Constitution." Binette, 33 S.W.3d at 218 (citing State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993)). Thus, in order for the investigatory stop of the appellant's vehicle to have been constitutionally valid, at the time Officer Workman activated his patrol car's blues lights, the officer must have had a reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed. Id. When evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances surrounding the stop. Watkins, 827 S.W.2d at 294.

On appeal, the appellant contends that at the time Officer Workman activated the blue lights, "there was no reasonable or articulable suspicion to stop the [appellant's] car." We disagree. As previously noted, Officer Workman testified at the suppression hearing that he was parked on the shoulder of Highway 27 when "a vehicle in the far right lane, close to the [shoulder] where I was setting [sic], almost hit my patrol car." Officer Workman further testified,

The [vehicle] proceeded north. As I started taking off after it, I kept it in sight because there was one other car on the roadway. This particular car crossed over into the shoulder of the road again, half of the car did. Blue lights, siren was activated.

Our supreme court has previously observed that "'[t]he number of times that a vehicle touches the center line or drifts within a lane is not dispositive' of whether reasonable suspicion existed to validate a traffic stop. Rather, . . . a court must consider the totality of the circumstances in determining whether reasonable suspicion was present at the time a stop was initiated." State v. Garcia, __ S.W.3d __ (Tenn. 2003), No. M2000-01760-SC-R11-CD, 2003 Tenn. LEXIS 856, at **24-25 (Nashville, Oct. 1, 2003) (citing Binette, 33 S.W.3d at 219). Moreover, this court has refused to find that an officer had reasonable suspicion to stop a driver whose driving was found not to be erratic or improper and which had not caused a hazard to other vehicles. State v. Smith, 21 S.W.3d 251, 258 (Tenn. Crim. App. 1999). However, in the instant case, Officer Workman testified that prior to the activation of the blue lights, he observed the appellant's vehicle nearly strike his patrol car and then cross "halfway" onto the shoulder of the highway. Thus, the appellant's driving was both erratic and dangerous, nearly causing an accident. Based upon these facts, we conclude that Officer Workman was justified in stopping the appellant's vehicle. The trial court did not err in denying the appellant's motion to suppress.

### III.  Conclusion

Accordingly, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-4-