IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2006

## STATE OF TENNESSEE v. BOBBY GENE WALKER, JR.

**Appeal from the Circuit Court for Blount County**
**No. C-15049      D. Kelly Thomas, Jr., Judge**

_____

**No. E2005-02200-CCA-R3-CD - Filed July 26, 2006**

_____

The defendant, Bobby Gene Walker, Jr., appeals a certified question of law regarding a police officer's stop of him which resulted in his arrest for driving under the influence and violating the implied consent law. Because we agree with the Circuit Court for Blount County that reasonable suspicion supported by specific and articulable facts existed for the stop, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

Bobby Gene Walker, Jr., Appellant, Pro Se.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Michael Gallegos, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On August 11, 2005, the defendant pleaded guilty in the Circuit Court of Blount County to driving under the influence, a Class A misdemeanor, *see* Tenn. Code Ann. § 55-10-401(a) (2004), and to violating the implied consent law, *see id.* § 55-10-406(a). He was sentenced on August 19, 2005, to 11 months and 29 days with all time suspended except 48 hours, a $350 fine, and loss of his license for one year. With the state's and the trial court's agreement, the defendant specifically reserved the right to appeal a dispositive question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(1). Tenn. R. Crim. P. 37(b)(2)(i) ("An appeal lies . . . from any judgment of conviction . . . upon a plea of guilty . . . if . . . defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case."). As recited in the judgments of conviction, the issue reserved for review is, "Whether[,] from the totality of the circumstances,

Officer Brett Hall had either probable cause or an articulable and reasonable suspicion that the defendant's vehicle or its occupant was subject to seizure for violation of the law based upon Mr. Hall's observation of the [defendant] driving down US Hwy 129 on or about 10/5/03." We conclude that the certified question was properly reserved. We also conclude that the stop of the defendant's automobile was constitutionally permissible.

We have reviewed the transcript of the defendant's April 11, 2005 hearing on his suppression motion. At the suppression hearing, Maryville Police Officer Brett Hall testified that on October 4, 2003, while on the night patrol shift, he stopped at the intersection of Foch Street and Highway 129, a four-lane highway with northbound and southbound lanes. While stopped at the intersection, he observed the defendant's vehicle traveling in the southbound left lane of Highway 129. Officer Hall made a right turn onto Highway 129, traveling in the same direction as the defendant. He observed the defendant's vehicle for approximately one-half mile before initiating the stop around midnight. Officer Hall stated that he observed "careless, erratic driving that is not safe," and he was "concerned for the safety of [the defendant's] vehicle and the potential of other vehicles."

During this observation period, the defendant traveled within the speed limit. However, he swerved within the left lane's boundaries, and the two right tires of his vehicle crossed the dotted center line before he swerved back into the left lane. Officer Hall further testified that the defendant traveled in the left lane "a short distance." Then he moved into the right lane and traveled some distance before approaching the intersection with Foothills Mall Drive. The defendant did not use turn signals when making these maneuvers.

At the Foothills Mall Drive intersection, a turn lane emerges to the right of the two southbound travel lanes, and a solid line delineates this lane from the right lane. A solid fog line separates the turn lane from the road's shoulder. Officer Hall testified that the defendant appeared to make a right turn into the turn lane, but the defendant turned prematurely. He testified that "approximately three tires" of the defendant's vehicle crossed the fog line and were off the roadway. Had the defendant continued on this course, Officer Hall believed that the defendant would have driven into an embankment. The defendant corrected by straddling the fog line. At this point, Officer Hall activated his cruiser video camera, filming the defendant riding the fog line into the turn lane. After this maneuver, Officer Hall activated his blue lights.

The defendant testified that he was traveling home, where he had lived for eight years, after watching football games at Cellar Bar in Alcoa. He flatly denied swerving within the travel lane, crossing the center line, and traveling in the left lane. The defendant stated that from the time he left Cellar Bar, he planned to turn onto Foothills Mall Drive because he normally traveled this route to his home, and he stated that he miscalculated the turn at Foothills Mall Drive because he was lighting a cigarette. The defendant admitted that no debris or other cars caused this maneuver. The defendant further admitted straddling the fog line.

The trial court denied the defendant's motion to suppress, crediting the officer's testimony that the defendant drove off the roadway for some distance. It noted that on a four-lane highway weaving within a single lane, touching the dotted line, or changing lanes without signaling, without erratic movements or affecting other drivers, does not justify a stop. However, considering that the defendant left his travel lane before reaching the turn lane, crossed the fog line partially leaving the roadway, and straddled the fog line until reaching the turn lane, the trial court concluded that Officer Hall had "perfect justification" to stop the defendant's vehicle.

The defendant pleaded guilty to driving under the influence and for violating the implied consent law, reserving the certified question of law, "[w]hether[,] from the totality of the circumstances, Officer Brett Hall had either probable cause or an articulable and reasonable suspicion that the defendant's vehicle or its occupant was subject to seizure for violation of the law based upon Mr. Hall's observation of the [defendant] driving down US Hwy 129 on or about 10/5/03." Because Officer Hall's detection of the defendant's intoxicated state could not have been proven except by stopping his vehicle and conducting further investigation, we agree that this question is dispositive. *See* Tenn. R. Crim. P. 37(b)(2)(1); *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996); *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). The defendant disputes the trial court's finding of reasonable suspicion, and the matter is properly before us for review.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. *Odom*, 928 S.W.2d at 23; *see also* Tenn. R. App. P. 13(d). The application of the law to the facts, however, is a question that an appellate court reviews de novo. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). We review the issue in the present appeal with these standards in mind.

Both the United States and Tennessee Constitutions protect against unreasonable searches and seizures. U.S. Const. amend IV; Tenn. Const. art. 1, § 7. A search or seizure conducted without a warrant is presumed unreasonable, thereby requiring the state to prove by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973); *State v. Simpson*, 968 S.W.2d 776, 780 (Tenn. 1998).

One exception to the warrant requirement exists when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. *See Terry v. Ohio*, 329 U.S. 1, 20-21, 88 S. Ct. 1868, 1880 (1968); *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997). Probable cause is not required for such an "investigatory stop." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401 (1979), established that generally police officers are entitled to stop a car briefly for investigative purposes if they have a reasonable suspicion, based

upon specific and articulable facts, that an offense is being or is about to be committed. *Id.* A reviewing court then must take into account the totality of circumstances when analyzing whether an officer's suspicion is "reasonable" and supported by specific and articulable facts. *State v. Yeargan*, 958 S.W.2d 626, 632 (Tenn. 1997). Circumstances relevant to that determination include, but are not limited to, the officer's "personal objective observations" and "the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him – inferences and deductions that might well elude an untrained person." *Keith*, 978 S.W.2d at 867.

There is no quarrel that the defendant was "seized" for constitutional purposes when Officer Hall activated his blue lights and stopped the defendant's vehicle. The question becomes whether the stop was constitutional because it was bottomed on a reasonable suspicion by Officer Hall, supported by specific and articulable facts.

On appeal, the defendant argues that Officer Hall stopped him after he made a "lawful turning movement," and therefore Officer Hall did not have reasonable suspicion for the stop. The defendant argues that "every driver's conduct is subject to minor imperfections," and his "minor deviation" was not suspicious and did not give rise to reasonable suspicion for the stop.

Here, however, the defendant's driving constituted more than garden variety imperfect driving. His vehicle swerved within its own lane and crossed the dotted center line with two tires. The defendant turned prematurely before the actual turn lane emerged. His vehicle crossed the fog line partially leaving the roadway. Officer Hall testified that "approximately three tires" were off the roadway. In addition, defendant's vehicle straddled the fog line for some distance before entering the turn lane's boundaries. These circumstances are distinguishable from minor imperfections in driving that our supreme court described in *Binette*. 33 S.W.3d at 219-20; *see, e.g.*, *State v. Jerome D. Manning*, No. M2001-03128-CCA-R3-CD (Tenn. Crim. App., Nashville, Dec. 20, 2002) (reasonable suspicion existed when defendant's vehicle twice crossed the center line into the opposite travel lane and crossed onto the right shoulder); *State v. Chris A. Jefferson*, No. E2000-00429-CCA-R3-CD (Tenn. Crim. App., Knoxville, Dec. 8, 2000) (reasonable suspicion supported traffic stop when defendant observed "cutting a 'z' continuously" from dotted center line to shoulder fog line). The imperfection at issue in *Binette* was weaving within a single lane of travel. 33 S.W.3d at 219. The *Binette* court reviewed a videotape of the defendant's driving and found that the defendant was weaving within his lane of travel, the defendant's weaving was not exaggerated, and the defendant did not violate any traffic rules. *Id.* The court held that this lateral movement within one lane was not pronounced and therefore did not give rise to reasonable suspicion. *Id.* at 220.

In the present case, not only did the defendant weave within his lane of travel, but he also crossed the dotted center line with two tires, he turned prematurely, running off the roadway with three tires, and he straddled the fog line until he maneuvered his vehicle within the turn lane's boundaries. These driving maneuvers constitute more than minor driving imperfections and therefore are distinguishable from the driving maneuver in *Binette*.

Furthermore, this case is factually distinguishable from *State v. Smith*, 21 S.W.3d 251 (Tenn. Crim. App. 1999), and *State v. Ann Elizabeth Martin*, No. E1999-01361-CCA-R3-CD (Tenn. Crim. App., Knoxville, Sept. 8, 2000), upon which the defendant relies. In *Smith*, the trooper observed the defendant's vehicle twice change lanes without signaling while passing another vehicle. 21 S.W.3d at 252. The defendant's vehicle returned to the right travel lane and drove *on* the fog line. *Id.* (emphasis added). The trooper did not testify that defendant's driving caused "any type of hazard." *Id.* However, the trooper stopped the defendant to issue a citation for improperly changing lanes, and after receiving consent to search the defendant's vehicle and after finding cocaine and marijuana, the trooper arrested the defendant. *Id.* at 252-53. This court noted that the trooper, according to his preliminary hearing testimony, stopped the defendant for no other reason but improperly changing lanes. *Id.* at 258. Accordingly, the court found that driving on the fog line, "standing alone, is not a sufficient and articulable fact to warrant the finding of reasonable suspicion." *Id.* In addition, the court found that the minor driving error committed by the defendant, changing lanes without signaling, which neither violated the traffic code nor created a hazard, did not subject the defendant to seizure. *Id.*

In *Ann Elizabeth Martin*, the officer observed the defendant traveling in the north, right-hand travel lane of Lee Highway, a four-lane highway in Chattanooga. Slip op. at 2. The defendant moved into a merge lane, which led to Highway 153, on the far right-hand side of the roadway. *Id.* After merging into this lane, the defendant's two right tires crossed the fog line. *Id.* The defendant's vehicle returned to the merge lane and then moved back into Lee Highway's northbound, right-hand lane. *Id.* The officer activated his cruiser video camera. *Id.* The defendant's vehicle crossed a bridge and made a left-hand turn, crossing the southbound lanes, into a parking lot. *Id.* Prior to the defendant's turn, the officer activated his blue lights. *Id.* The court held that the officer did not have reasonable suspicion for the stop. *Id.*, slip op. at 7. The court stated, "It is perfectly plausible that a motorist may initiate a right turn, realize that he or she does not want to make the turn, and resume travel in the correct lane having, ever so briefly, crossed the solid line on the right-shoulder." *Id.*

Here, the defendant, similar to the defendant in *Smith*, changed lanes without signaling. *See* 21 S.W.3d at 252. However, unlike the defendant in *Smith*, the present defendant did not drive on the fog line; he crossed the fog line with three tires. *See id.* Moreover, Officer Hall testified that he observed "careless, erratic driving that is not safe." The trooper in *Smith* did not testify that the defendant's driving caused a hazard. *Id.* Furthermore, the defendant in this case crossed the fog line after turning prematurely, unlike the defendant in *Ann Elizabeth Martin*, *see* slip op. at 2. He turned before the turn lane emerged, running off the roadway, and straddled the fog line until he came within the turn lane's boundaries. The defendant in *Ann Elizabeth Martin* crossed the fog line with two tires "ever so briefly" before deciding not to exit and resuming travel in the right travel lane. Slip op. at 2, 7. Based on these driving maneuvers, the facts of the present case are distinguishable from the facts of *Smith* and *Ann Elizabeth Martin*.

In addition to these distinguishable driving maneuvers, Officer Hall observed the defendant's vehicle weave within the left lane's boundaries and cross the dotted center line with two

tires. A reviewing court must consider the totality of the circumstances in determining whether reasonable suspicion was present at the time a stop was initiated. *Yeargan*, 958 S.W.2d at 632. Considering the weaving within a single lane and the crossing of the center line in addition to turning prematurely, partially leaving the roadway, and straddling the fog line, we hold that Officer Hall had reasonable suspicion to stop the defendant.

For the reasons we have discussed, we conclude that the trial court correctly denied the defendant's motion to suppress. The judgments of the trial court, accordingly, are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE