# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 7, 2008 Session

## STATE OF TENNESSEE v. BUFORD C. THRONEBERRY

**Appeal from the Circuit Court for Rutherford County**
**No. F-57356     James K. Clayton, Jr., Judge**

---

**No. M2008-00464-CCA-R3-CD - Filed Janaury 12, 2009**

---

The defendant, Buford C. Throneberry, appeals his conviction of disorderly conduct that followed a bench trial in the Rutherford County Circuit Court. The defendant claims that the evidence was insufficient to support the conviction. Because we conclude that the State failed to prove that the defendant's words or actions prevented anyone from carrying on lawful activities, we reverse the conviction and dismiss the charge.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed; Charge Dismissed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Joe M. Brandon, Jr., Smyrna, Tennessee, for the appellant, Buford C. Throneberry.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Trevor Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Scott Newberg, a Murfreesboro police officer, testified that on Valentine's Day, February 14, 2005, he went to 812 Crestland Avenue in Murfreesboro in response to a "disturbance" call. He testified that, when he arrived, he found the defendant "very upset and yelling that his wife's home healthcare nurse would not let him inside the residence." The officer testified that, based upon his understanding, the defendant and his wife were "separated and she lived at that address and he lived at a different one."

Officer Newberg testified that he entered the house through the rear door and spoke to the home healthcare nurse who informed him that Tommy Throneberry, a son of the defendant and his wife, had a power of attorney for Mrs. Throneberry and had given "specific instructions not to let [the defendant] in because [Mrs. Throneberry had] been sick." The officer testified that, while

the officer spoke with Tommy Throneberry on the telephone, the defendant "continued to walk to the back of the house several different times" and that he asked the defendant to return to the front of the house each time. Officer Throneberry testified that Tommy Throneberry told him over the telephone that he had "court papers that stated that [the defendant and his wife] weren't supposed to be around each other."[1] The officer then went to the front of the house and explained to the defendant that "it was really a civil matter that needed to be addressed to their attorneys." He said that the defendant "became more upset, yelling, just became very irate." He informed the defendant that he was creating a disturbance and should leave. After the defendant continued to yell, the officer instructed him "several times to leave the property or he would be arrested."

Officer Newberg testified that the defendant then got into his pickup truck and "began to back out of the driveway," and while the officer was talking to the defendant's grandson who had arrived at the scene, the defendant "put the vehicle in drive, and gassed the engine directly toward [the officer], stopping literally within inches of striking [him]." After the defendant refused to back his truck away as instructed, the officer arrested him for disorderly conduct and aggravated assault.

Officer Newberg reiterated that the defendant "continually interrupted" him while he spoke with the nurse and on the telephone. The defendant stood at the back door, knocking and "yelling to get in." The defendant ignored the officer's requests to return to the front of the house. The officer decided to arrest the defendant after he stopped his truck near where the officer was standing. He testified that the defendant impeded his investigation and disobeyed lawful commands of a police officer. The officer introduced a videotape of the scene as recorded by a camera in his police car, and the tape was played in court.

The videotape showed only the street in front of the patrol car and did not depict any of the participants in the incident; however, the tape recorded an audio feed from Officer Newberg's microphone. We acknowledge that the microphone picked up the officer's voice better than other sounds and may not have replicated the volume of the defendant's voice; however, it is clear that, when the officer first arrived, he and the defendant spoke conversationally. The defendant told the officer that his wife regularly expected his visits at three o'clock and that he came on that day to give her flowers and a bowl of fruit for Valentine's Day. When the officer went inside the house, he conversed with a female and apparently talked on the telephone with someone. At one point, at least, the tape records a knocking sound, but the tape did not register what if anything the defendant was saying outside the door. The female told the officer that the house belonged to Mrs. Throneberry. When the officer left the house and returned to the street, he told the defendant that he need not take a picture of the patrol car, as the defendant was apparently doing, and that the officer would give him his business card. The officer told the defendant that the house belonged to Mrs. Throneberry, that the defendant would have to leave, and that he would be arrested for trespass if he did not do so. The defendant sounded agitated by this information, but the tape did not register yelling. The officer remarked that he was tired of the defendant "dog cussing" him and instructed the defendant to leave. Apparently, the defendant then got into his truck and started to leave.

---

[1]The officer testified that he viewed "a copy of those papers" but not until after he arrested the defendant.

On cross-examination, Officer Newberg admitted that as of the time he left the house to return to the driveway, where he found the defendant taking a picture of his car, the defendant had committed no offenses. The officer testified that the defendant's grandson handed him a piece of paper that allegedly authorized the defendant to come to the residence. He agreed that the defendant was elderly and had a vase of flowers between his legs in the truck when he backed up and pulled forward. The officer also agreed that he learned after the incident on Valentine's Day 2005 that Tommy Throneberry apparently had misrepresented the ownership of the property at 812 Crestland Avenue and the existence of a restraining order.

Jim Throneberry, the defendant's grandson, testified on behalf of the defendant that he arrived at 812 Crestland Avenue on February 14, 2005, between the time the defendant arrived and when the officer arrived. He testified that the defendant was not being "rude" and that both the defendant and the officer were "rather calm." He stated that he had a paper that showed that the defendant was permitted to come to the residence, and he handed the paper to the officer. He testified that the defendant had been married to his wife for 57 years. He testified that while the officer was inside the house, the defendant went around back to see what was going on, stating that he would like to see his wife. He testified that when the officer came out of the house and asked the defendant to leave, the defendant got into his truck and started to leave. He explained that the defendant's long, four-door truck was parked between two other vehicles at a right angle to the driveway, necessitating sharp turning procedures to back out and leave. He testified that he stood beside the officer and never thought that the defendant was trying to menace the officer with the truck.

The defendant was indicted on charges of aggravated assault, reckless endangerment, and disturbing the peace. At a bench trial, the circuit court acquitted the defendant of assault and reckless endangerment but convicted him of disorderly conduct. The trial court found that the defendant owned the residence at 812 Crestland Avenue, that he and his wife were estranged with a divorce pending, that the defendant's wife lived in the residence, and that the defendant lived elsewhere. The court found that the defendant "did cause an unreasonable noise which prevented the officer from carrying out his duties and that he acted recklessly." The defendant now appeals his conviction of disorderly conduct and claims that the evidence was insufficient to support the conviction. We agree.[2]

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

---

[2]We notice that the defendant filed a timely motion for new trial on January 3, 2007, in which he claimed as error only that the convicting evidence was insufficient. On March 18, 2008, the trial court entered written findings of fact and conclusions of law, signed by the trial judge, which recited that the defendant "did cause an unreasonable noise which prevented the officer from carrying out his duties and that he acted recklessly." The document, however, did not specifically order the overruling of the motion for new trial. The State does not challenge the jurisdiction of the appellate court, and we treat the document entered by the trial judge as an order effectively overruling the motion for new trial. As such, the February 27, 2008 notice of appeal was timely. *See* Tenn. R. App. P. 4(d).

a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). The rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

In determining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"[W]hen a court's findings of fact," however, "are based solely on evidence that does not involve issues of credibility, such as the videotape evidence in this case, the rationale underlying a more deferential standard of review is not implicated." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

As is pertinent to the indictment and the trial court's ruling in the present case, a person commits disorderly conduct "who makes unreasonable noise which prevents others from carrying on lawful activities." T.C.A. § 39-17-305(b). Such an offense is a Class C misdemeanor. *Id.* § 39-17-305(c).

In the present case, we do not treat the videotape or the audio portion of the tape as the sole determinant in resolving the factual issue of the defendant's behavior on Valentine's Day 2005. The trial court's determinations apparently were not based solely upon the tape, and in this case, we recognize the possibility that the audio recording did not accurately or fully depict the events.

That said, we nevertheless conclude that the evidence does not support a finding beyond a reasonable doubt that the defendant's words or actions *prevented* the officer from conducting lawful activities. The officer testified that the defendant had committed no offense prior to the officer's returning to the driveway after leaving the house. The encounter between the officer and the defendant, though to some degree contentious, was brief, and the defendant attempted to comply with the officer's request to get in his truck and leave. We cannot discern that the officer was in any way prevented from carrying on his investigation or any other lawful activity.[3]

---

[3]We point out that any consideration of attempt to commit disorderly conduct as a lesser included offense of disorderly conduct, a Class C misdemeanor, is foreclosed by the realization that our criminal code generally proscribes no misdemeanors below Class C. Tennessee Code Annotated section 39-12-107 provides that criminal attempt is graded one classification lower than the most serious crime attempted, "unless the offense attempted was a Class C misdemeanor, in which case the attempt would not be an offense." T.C.A. § 39-12-107(a) (2008).

Accordingly, the judgment of the trial court is reversed, and the charge of disorderly conduct is dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE