# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 9, 2012

## STATE OF TENNESSEE v. RAY NEIL THOMPSON

**Appeal from the Criminal Court for Davidson County**
**No. 2008-D-3845    Steve Dozier, Judge**

**No.  M2011-01613-CCA-R3-CD - Filed January 3, 2013**

Appellant, Ray Neil Thompson, was convicted by a Davidson County jury of one count of aggravated robbery.  He was sentenced to twenty-seven years in incarceration as a Range III, persistent offender.  After the denial of a motion for new trial, Appellant initiated an appeal.  On appeal, he argues: (1) that the trial judge improperly refused to recuse himself; (2) that the trial court improperly denied a motion to suppress Appellant's statement; and (3) that the trial court improperly sentenced Appellant.  After a review of the evidence and authorities, we conclude that the trial court did not abuse its discretion in denying the request for recusal or the motion to suppress and that the trial court properly sentenced Appellant.  As a result, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined, and NORMA MCGEE OGLE, J., concurred in result.

Jeffrey A. DeVasher, Assistant Public Defender, (on appeal), C. Dawn Deaner, Public Defender, and Jonathan F. Wing, Assistant Public Defender, (at trial), for appellant, Ray Neil Thompson.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

Appellant was indicted by the Davidson County Grand Jury in October of 2008 for three counts of aggravated robbery and one count of evading arrest for events that took place at the following businesses located in Nashville: Baskin Robbins, Smoothie King, and Twenty-One and Up Video. Appellant was arrested after witnesses to the robberies provided a partial license plate number to authorities and it was discovered that the vehicle with the license plate was registered to Appellant. Appellant was eventually arrested. Once indicted, Appellant filed a motion to sever the offenses. The trial court granted the motion.

Prior to trial, Appellant sought to suppress his statement on the ground that it was not voluntary and was obtained in violation of his constitutional rights.

### *Testimony at the Suppression Hearing*

Detective Robert Peterson of the Metropolitan Nashville Police Department was the lead investigator for the robberies that took place between September 12, 2008, and September 16, 2008, at Smoothie King, Baskin Robbins, and Twenty-One and Up Video, three businesses that were located in close proximity to one another. The perpetrator at all three robberies displayed an item wrapped in a red handkerchief that victims believed to be a gun. The witnesses were able to provide police with a description of the robber. All of the descriptions were similar. One of the victims was also able to provide a partial license plate number. The partial license plate number combined with the description of the perpetrator led police to believe that Appellant was responsible for the crimes. As a result of the investigation a "BOLO" ("Be On The Lookout") was issued for Appellant.

Appellant's vehicle was located by Officer Sung Jun Park at 920 Chickasaw. Appellant was spotted standing in front of his vehicle. Once he saw the police car, Appellant started to back away. Appellant was told to stay put, but he ran from the police. A canine unit apprehended Appellant two houses away, hiding under some bushes. Officer Park secured the vehicle and took a female passenger into custody. When Officer Park secured the vehicle, he discovered an orange and yellow water gun wrapped in a red bandana in the vehicle.

Appellant was bitten by the canine unit during his arrest and taken to Metro General Hospital for treatment. Detective Peterson went to the hospital to interview Appellant. Appellant was read his *Miranda* rights after the detective determined that Appellant was awake and coherent. Appellant signed the waiver and agreed to speak to the officer.

According to Detective Peterson, Appellant did not appear intoxicated or impaired at the time of the interview.

Prior to the interview, Appellant stated that he did not want to sign the waiver or answer any questions, but he changed his mind. During the interview, Appellant informed the officer that he was addicted to crack cocaine. Appellant was given pain medication about forty minutes into the interview.

At the hearing, Appellant testified that he had used drugs all day on the day of his arrest. In fact, Appellant claimed that he was on a three-day "drug bender" during which he had been using cocaine, beer, and marijuana. On the day of the arrest he had used a quarter ounce of crack, a case of beer, and a quarter ounce of marijuana. Appellant claimed that he had not slept in three days.

Appellant insisted that the medication he received at the hospital made him feel "distracted" and that he was not able to think clearly because of the pain that he was experiencing at the time of the police interview. Appellant did not remember signing the *Miranda* warning. Appellant stated that he was not treated at the hospital for any issues related to his intoxication. Additionally, Appellant admitted that he had twelve prior convictions for forgery, a conviction for aggravated robbery, two theft convictions, a burglary conviction, and two convictions for receiving stolen property.

The trial court denied the motion to suppress, finding that there was "nothing constitutionally infirm about the discussion [Appellant] had with Detective Peterson" where Appellant agreed to speak with him and Appellant signed the waiver of rights form.

On the day that trial was set to begin, Appellant had a dispute with his attorney. Trial counsel for Appellant informed the trial court that Appellant was being uncooperative and had even spit in the attorney's eye. The trial court brought Appellant into the courtroom to find out what was going on between Appellant and trial counsel. The trial court told Appellant to "shut [his] mouth." Appellant told the trial court, "You're not my father." At that point, the trial court held Appellant in contempt of court and sentenced him to ten days in incarceration to run consecutively to any other sentence he was already serving. The trial court asked Appellant why he had to "act an ass" in the courtroom and congratulated Appellant by asking everyone to "give a round of applause" to Appellant for getting what he wanted, a continuance. Appellant left the courtroom. The trial court asked if a transfer to another court would "help the situation." Trial counsel declined.

After this episode, Appellant filed a motion to recuse the trial court, insisting that the trial court was not impartial and had expressed clear disdain for Appellant. Additionally,

Appellant argued that, had he been in the courtroom, he would have accepted the trial court's offer to transfer to a different courtroom.

Upon review, the trial court denied the motion to recuse, finding that it could preside impartially over the matter.

*Trial Testimony*

At trial, the testimony about the particulars of the robbery came from seventeen-year-old Clelie Cottle, an employee of Smoothie King in Belle Meade. Ms. Cottle was preparing to close that store on the night of September 12, 2008, at around 9:00 p.m. Ms. Cottle was alone in the store after her two co-workers left to take out the trash. Appellant entered the store. Ms. Cottle asked Appellant if he needed any help. Appellant replied that he was trying to decide what type of smoothie he wanted to order. Appellant walked around to the cash register at that point and pulled an object out of his pocket that was wrapped in a bandana. Ms. Cottle stated that it appeared to be a gun. Appellant pointed the object at Ms. Cottle and instructed her to take the money out of the register. Appellant took the money out of the tip jar as Ms. Cottle emptied the register. Appellant asked for a bag. Ms. Cottle told Appellant she did not have a bag. Appellant told Ms. Cottle to get down on the ground. As Ms. Cottle got down on the ground, she was able to pull the silent alarm to alert authorities.

Four days after the incident, Ms. Cottle identified Appellant in a photographic lineup. She was about 80 percent sure that the person in the photograph was the perpetrator. Ms. Cottle later identified Appellant in person and at trial. She was confident that she positively identified Appellant because during the robbery she was able to observe Appellant from a distance of approximately three feet and had an unobstructed view of his face.

Similar to the testimony at the hearing on the motion to suppress, Officer Park testified at trial that he located Appellant's vehicle after hearing a BOLO from dispatch. The officer saw Appellant on foot and watched as Appellant ran away from the police vehicle. Officer Steven Coleman and his police canine, Zac, were able to track Appellant to an overgrown area several houses away from the vehicle. The police canine was able to apprehend Appellant. Appellant was taken to the hospital for treatment for a dog bite he received during his apprehension. While at the hospital, Appellant admitted that he was the person involved in the robbery.

During a search of Appellant's vehicle, police found an orange and yellow water gun wrapped in a red bandana.

At the conclusion of the proof, the jury found Appellant guilty of aggravated robbery. The trial court held a separate sentencing hearing. At the hearing, the trial court determined that Appellant must serve 100 percent of his sentence pursuant to Tennessee Code Annotated section 40-35-501(k)(2) and sentenced Appellant to twenty-seven years in incarceration. The trial court determined that Appellant had a previous history of criminal convictions, a history of failed attempts at conditions of a sentence that involved release in the community, and that Appellant committed the offense while on parole.

On appeal, Appellant challenges: (1) the denial of the motion to suppress; (2) the denial of the motion to recuse; and (3) his sentence.

*Analysis*
*Denial of Motion to Recuse*

Appellant argues that the trial judge should have recused himself from Appellant's case after an incident that occurred on September 20, 2010. Specifically, Appellant insists that the trial judge made comments that established the trial judge's impartiality and a recusal was necessary to avoid the appearance of impropriety. Further, Appellant argues that the trial judge engaged in an improper analysis of the law prior to the denial of the recusal. The State disagrees.

When deciding whether to grant a motion for recusal, a trial judge exercises his or her discretion. *Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991). This Court may reverse the trial judge's decision only when the judge has clearly abused that discretionary authority. *State v. Cash*, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993). The judge should recuse himself or herself whenever the judge's "impartiality [could] reasonably be questioned." *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) (quoting Code of Judicial Conduct, Canon 3(c) (now part of Tenn. Sup. Ct. R. 10, Canon 3(E)(1)). Furthermore, recusal is appropriate "when a person of ordinary prudence in the judge's position . . . would find a reasonable basis for questioning the judge's impartiality." *Id.* (footnote omitted). The trial judge must determine whether he or she has a subjective bias against the defendant and whether the trial judge's impartiality could reasonably be questioned under an objective standard. *State v. Connors*, 995 S.W.2d 146, 148 (Tenn. Crim. App. 1998).

"A judge should grant a motion to recuse when the judge has any doubt as to his or her ability to preside impartially in the case or when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (internal quotation omitted). A judge's duty to recuse springs from a constitutional source;

Article VI, section 11 of the Tennessee Constitution provides that "[n]o Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested . . . ." Our state supreme court has explained that "[t]he purpose of Article 6, § 11 of our Constitution is to insure every litigant the cold neutrality of an impartial court." *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967). Furthermore, Tennessee Supreme Court Rule 10, Canon 3(E)(1), states: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ."

However, it is well established that not every appearance of bias, partiality, or prejudice merits recusal. "To disqualify, prejudice must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994) (internal quotation omitted). Moreover, "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias" and "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Id.*

In the order denying the motion for recusal, the trial court commented that there was no "doubt as [to] its ability to preside impartially." In other words, that the trial court had no subjective bias. Next, the trial court determined that the facts known by the court would not "raise a reasonable basis for questioning the court's impartiality." After conducting this analysis, the trial court concluded that recusal was not warranted. We agree. Our review of the record reveals that Appellant displayed an utter lack of respect for both his appointed counsel and the trial court and, after being instructed to "shut" his mouth, Appellant continued his disruptive behavior by telling the judge that he was not his father. At that point, the trial judge held Appellant in contempt and sentenced him to ten days in incarceration. Rather than accepting the trial court's admonition and changing his behavior, Appellant continued his contumacious behavior. At that point, the trial court called Appellant an "ass." While we caution trial courts that name calling is not advisiable when dealing with a disruptive and disrespectful defendant, we acknowledge that the judge's comments in this case do not demonstrate any sort of bias or lack of impartiality in the ability to fairly adjudicate the case, but rather evince the trial court's frustration with Appellant's behavior in the court's attempt to maintain control in the courtroom. We conclude that the trial judge did not abuse his discretion in denying Appellant's motion for recusal.

*Motion to Suppress*

Next, Appellant argues that the trial court improperly denied his motion to suppress. Specifically, he insists that he was impaired when the statement was made so it was not the "product of a free mind and rational intellect." The State responds by arguing that Appellant knowingly, voluntarily, and intelligently waived his right against self-incrimination before making a statement to police.

This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). Further, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

The Fifth Amendment to the United States Constitution provides in pertinent part that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, Article I, Section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. However, an accused may waive this right against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the United States Supreme Court held that a suspect "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* at 479. The Supreme Court held that a suspect may knowingly and intelligently waive the right against self-incrimination only after being apprised of these rights. *Id.* Accordingly, for a waiver

-7-

of the right against self-incrimination to be constitutionally valid, the accused must make an intelligent, knowing, and voluntary waiver of the rights afforded by *Miranda*. *Id.* at 444. In considering the totality of the circumstances a court should consider:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

*State v. Huddleston*, 924 S.W.2d 666, 671 (Tenn. 1996) (citing *State v. Readus*, 764 S.W.2d 770, 774 (Tenn. Crim. App. 1988)). However, no single factor is necessarily determinative. *State v. Blackstock*, 19 S.W.3d 200, 208 (Tenn. 2000) (citing *Fairchild v. Lockhart*, 744 F.Supp. 1429, 1453 (E.D. Ark. 1989)). Further, "[a] trial court's determination that a confession was given knowingly and voluntarily is binding on the appellate courts unless the defendant can show that the evidence preponderates against the trial court's ruling." *State v. Keen*, 926 S.W.2d 727, 741 (Tenn. 1994).

A court may conclude that a defendant voluntarily waived his rights if, under the totality of the circumstances, the court determines that the waiver was uncoerced and that the defendant understood the consequences of waiver. *State v. Stephenson*, 878 S.W.2d 530, 545 (Tenn. 1994). In order to be considered voluntary, the statement "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Bram v. United States*, 168 U.S. 532, 542-43 (1897); *see also State v. Kelly*, 603 S.W.2d 726, 727 (Tenn. 1980). However, "[a] defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense." *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996). Instead, "'coercive police activity is a necessary predicate to finding that a confession is not voluntary . . . .'" *Id.* (quoting *State v. Brimmer*, 876 S.W.2d 75, 79 (Tenn. 1994)).

In the case herein, we determine that Appellant has failed to establish that the evidence preponderates against the trial court's determination that the statement was freely and voluntarily given. Officer Peterson testified that Appellant executed a waiver of his rights prior to making a statement to authorities. Officer Peterson testified that Appellant was attentive, appeared to understand his rights, and did not appear intoxicated. The trial

court listened to the audio recording of Appellant's statement and refused to accredit Appellant's testimony that he was too intoxicated to understand his actions. After hearing the evidence, the trial court determined that Officer Peterson was a credible witness; that he advised Appellant of his rights; that there was no evidence that Appellant was coerced, threatened, intimidated, or impaired; or that the police in any other way violated Appellant's constitutional rights against self-incrimination. Moreover, Appellant admitted that the hospital staff did not administer pain medication until approximately forty-two minutes into the interview that lasted nearly one hour and fifteen minutes.

In the case herein, the evidence does not preponderate against the judgment of the trial court. Under these circumstances the decision to deny the motion to suppress must be upheld.

*Sentencing*

Lastly, Appellant makes several challenges to his sentence. First, Appellant insists that the trial court improperly ordered him to serve 100 percent of his sentence because the evidence does not demonstrate that he used an actual firearm during the commission of the offense. Additionally, Appellant insists that his sentence is excessive because his sentence is not the least severe measure necessary to achieve the purposes of the sentence imposed. The State contends that the sentence is appropriate and that Appellant must serve 100 percent of his sentence because he was convicted of aggravated robbery.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *See State v. Susan Renee Bise*, No. E2011-00005-SC-R11-CD, ___S.W.3d ___, 2012 WL 4380564, at *17 (Tenn. Sept. 26, 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Susan Renee Bise*, 2012 WL 4380564, at *16 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Susan Renee Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Susan Renee Bise*, 2012 WL 4380564, at *20.

We first address Appellant's argument that he cannot be ordered to serve 100 percent of his sentence under Tennessee Code Annotated section 40-35-501(k)(2) because he did not use a firearm in the commission of the aggravated robbery, he used a water gun. We disagree. Tennessee Code Annotated section 40-35-501(k)(2) provides the following:

> There shall be no release eligibility for a person committing aggravated robbery, as defined in § 39-13-402, on or after January 1, 2008, if the person has at least one (1) prior conviction for aggravated robbery, as defined in § 39-13-402, or especially aggravated robbery, as defined in § 39-13-403. The person shall serve one hundred percent (100 percent) of the sentence imposed by the court less sentence credits earned and retained; however, no sentence reduction credits authorized by § 41-21-236 or any other provision of law shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).

The plain language of the statute makes no mention of the requirement that the offense be committed with a firearm. It merely involves an increase in release eligibility when a defendant has a prior aggravated robbery conviction. In the present case, Appellant's prior conviction for aggravated robbery rendered him a repeat aggravated robbery offender as a matter of law, and the trial court could not deviate from the release eligibility requirement set forth by the legislature in Tennessee Code Annotated section 40-35-501.

As to the length of Appellant's sentence, after a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. The trial court applied several mitigating factors, recognizing that Appellant had an abusive childhood and suffered from

drug addiction but gave those factors little weight. The trial court also applied several enhancement factors: that Appellant had "prior criminal convictions in addition to those necessary to establish the appropriate range"; that Appellant had "failed to comply with the conditions of a sentence involving release into the community"; and that Appellant "was released on parole" at the time of the offense. T.C.A. § 40-35-114(1), (8), (13). After application of the mitigating and enhancement factors, the trial court sentenced Appellant to twenty-seven years. The trial court placed the reasons for imposing the specific sentence on the record. Further, Appellant's sentence is in the range of punishment provided for his offenses and the sentence appears to be consistent with applicable sentencing principles and guidelines. Therefore, this Court must affirm the sentence.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE