# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 14, 2013

## STATE OF TENNESSEE v. JOSHUA LYNN PITTS

**Appeal from the Circuit Court for Rutherford County**
**No. M67716     David M. Bragg, Judge**

_____

**No. M2013-00465-CCA-R3-CD - Filed September 20, 2013**

_____

Following a bench trial, the trial court convicted the Defendant, Joshua Lynn Pitts, of driving under the influence ("DUI"). The trial court sentenced the Defendant to serve eleven months and twenty-nine days of probation after serving forty-eight hours in jail. On appeal, the Defendant contends that the trial court erred when it denied his motion to suppress the evidence obtained pursuant to an illegal stop of his vehicle. After thoroughly reviewing the record and applicable authorities, we conclude that the officer had reasonable suspicion to stop the Defendant's vehicle. As such, we conclude that the trial court did not err when it denied the Defendant's motion to suppress, and we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH AND JAMES CURWOOD WITT, JR., JJ., joined.

Gregory M. Reed, Murfreesboro, Tennessee, for the Appellant, Joshua Lynn Pitts.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; Tom Jackson, Assistant District Attorney General, Shawn Puckett, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from a law enforcement officer's stop of the Defendant's vehicle on November 17, 2011, on Northwest Broad Street in Murfreesboro, Tennessee. Pursuant to the events that occurred during and after this stop, the Defendant was arrested and later

indicted on charges of DUI and DUI with blood alcohol content over .08%.

## A. Suppression Hearing

Following the return of the indictment, the Defendant filed a motion to suppress in the trial court. The trial court held a hearing on the Defendant's motion to suppress, and the parties presented the following evidence: Officer Higgins testified that he had been employed with the Murfreesboro Police Department for fourteen years and that he has been assigned to the DUI Enforcement Unit for eleven years. He also testified that he had completed standardized field sobriety school.

Officer Higgins testified that on November 17, 2011, he stopped the Defendant's vehicle for failing to maintain his lane of traffic because the vehicle had crossed the center line three times. Officer Higgins also testified that he "thought" he noticed that the Defendant had a malfunctioning brake light and that, after making these observations, Officer Higgins activated his emergency lights. Officer Higgins testified that, when the Defendant applied his brakes, Officer Higgins was able to confirm that the Defendant's brake light was in fact inoperable.

Officer Higgins testified that, when he approached the Defendant's vehicle, Officer Higgins could smell alcohol on the Defendant's breath and could see that his eyes were bloodshot. Officer Higgins testified that the Defendant performed the field sobriety tests when asked to do so and that the Defendant showed indicators of impairment. Officer Higgins placed the Defendant under arrest for driving under the influence of an intoxicant. Officer Higgins testified that later testing revealed that the Defendant's blood alcohol content ("BAC") was .14.

The State introduced a DVD recording of the stop of the Defendant's vehicle, taken at the time of the stop by a camera mounted on Officer Higgins's police car. Officer Higgins testified that two of the vehicle's "weaving incidents" were depicted on the recording, and that the third incident was not shown on the recording. The video showed a pickup truck traveling in the right lane of a four lane road, comprised of two lanes traveling in each direction with a grass median. The video showed the vehicle's driver's side tires move across the lane divider line, into the adjacent lane, on two different occasions, after which blue lights flash indicating that the police car's emergency lights had been activated. The Defendant immediately engaged his right turn indicator and pulled the vehicle toward the right shoulder.

After hearing the evidence, the trial court issued an order denying the Defendant's motion to suppress. In the order, the trial court stated:

Officer Higgins testified at the hearing on the suppression motion he thought he saw the Defendant's brake light was not operating correctly when he turned onto NW Broad Street from Thompson Lane. There was no testimony concerning the Defendant's brake light during the preliminary hearing and Officer Higgins testified he first encountered the Defendant on NW Broad Street. There was no testimony about turning on NW Broad Street from Thompson Lane. Regardless of where the contact was made, the video shows the [D]efendant's vehicle traveling on NW Broad when Officer Higgins activates his emergency equipment.

The trial court also made the following finding:

The Court finds the testimony of the Officer to be credible and the video supports his testimony. The Court finds the officer had specific articulable facts supporting an investigatory stop of the Defendant's vehicle.[1]

## B. Trial

A bench trial was held and the following evidence was presented: Officer Higgins testified that when he first noticed the Defendant's vehicle turning onto Northwest Broad Street, he also noticed that the Defendant's driver's side brake light was not working. Officer Higgins said that when his vehicle caught up with the Defendant's vehicle, Officer Higgins noticed the Defendant's "weaving in his lane crossing the dotted line, center dotted line approximately three times." Officer Higgins testified that, after seeing the malfunctioning brake light and the driver's side tires cross the dotted line, Officer Higgins decided to pull the Defendant's vehicle over. Officer Higgins testified that he could smell alcohol on the Defendant, and his speech was "a little slurred." Officer Higgins testified that he asked the Defendant to perform a field sobriety test and that the Defendant showed multiple "clues of impairment" when performing the test. Officer Higgins placed the Defendant under arrest; a blood test was then taken to determine the Defendant's BAC, and Officer Higgins testified that the Defendant's BAC was .14.

---

[1]The Defendant argues that Officer Higgins's testimony at the suppression hearing was inconsistent with his testimony at the preliminary hearing; the trial court judge, presumably aware of the inconsistencies as raised by the Defendant during his cross-examination of Officer Higgins, found Officer Higgins' testimony to be credible and found that the video evidence supported his testimony. Matters of witness credibility are firmly entrusted to the trial judge, and a finding of credibility is to be upheld so long as the greater weight of the evidence, given the strongest legitimate view in favor of the prevailing party, supports the trial court's finding. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

On cross-examination, Officer Higgins testified that he was sure of the "brake light violation" before he activated his emergency lights. Officer Higgins also read the arrest report into the record, where he indicated that the stopped the Defendant's vehicle for "[l]eaving its lane and cross[ing] the center line three times."

At the close of the evidence, the Defendant renewed his motion to suppress, which the trial court denied. The trial court held, that based on the testimony and the video recording, the officer had specific articulable facts, based on the totality of the circumstances, to stop the Defendant's vehicle. The trial court found the Defendant guilty of DUI and DUI with a BAC over .08%. The trial court merged the second count with the DUI count.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his motion to suppress the evidence obtained pursuant to the traffic stop. The Defendant contends that Officer Higgins activated his blue lights before he observed the inoperable brake light on Defendant's vehicle, and, thus, the brake light could not be a legal basis for the stop. He further contends that the Defendant's operation of the vehicle and the alleged weaving of the vehicle does not rise to the level of a violation of traffic laws, and that the movement "cannot be described as anything more than drifting of a kind found not to be sufficient to support a valid stop[.]" The State counters that, at the time Officer Higgins activated his emergency lights, he had observed the Defendant's vehicle swerve into the adjacent lane three times, and he also believed that the Defendant was operating his vehicle with a broken brake light. On these facts, the State asserts that Officer Higgins had a constitutional basis for initiating the investigatory stop of the Defendant's vehicle.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Sneed v. State*, 423 S.W.2d 857, 860 (1968)). The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Tyler*, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the State establishes that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

4

An exception to the warrant requirement exists when a police officer conducts an investigatory stop based on a reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Binette*, 33 S.W.3d at 218. Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity[.]" *Binette*, 33 S.W.3d at 218 (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Reasonable suspicion is determined based upon the totality of the circumstances of the encounter. *Binette*, 33 S.W.3d at 218 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). The police may stop a vehicle if they have either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants are subject to seizure for violation of the law. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn.1992). An officer's subjective intention for stopping a vehicle is irrelevant, as long as independent grounds exist for the detention. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *State v. Vineyard*, 958 S.W.2d 730, 731 (Tenn. 1997).

When a traffic stop is initiated based on probable cause or reasonable suspicion, a resulting investigation is reviewed under the framework established in *Terry v. Ohio*. *See United States v. Brignoni-Ponce*, 422 U.S. 873 (1975). Such investigations require that an officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *See State v. England*, 19 S.W.3d 762, 767-68 (Tenn. 2000). Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. *Royer*, 460 U.S. at 500. "[T]he proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *State v. Simpson*, 968 S.W.2d 776, 783 (Tenn. 1998) (citation omitted). "If the time, manner or scope of the investigation exceeds the proper parameters," a constitutionally permissible stop may be transformed into an impermissible stop. *State v. Brown*, 294 S.W.3d 553, 562 (Tenn. 2009) (quoting *State v. Childs*, 256 F.3d 559, 564 (7th Cir. 2001), *vacated*, 277 F.3d 947 (7th Cir. 2002)); *State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002).

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews *de novo* the trial court's application of the

law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

The evidence presented by the State at the suppression hearing was Officer Higgins' testimony and the video recording from his police car. The trial court found Officer Higgins' testimony to be credible and that the video supported his testimony. Officer Higgins testified that the vehicle's brake light was not functioning, in violation of Tennessee Code Annotated, section 55-9-402, which provides that "[e]very motor vehicle shall be equipped with two (2) red tail lamps and two (2) red stoplights on the rear of the vehicle[.]" In his brief, the Defendant argues that Officer Higgins only "thought" the Defendant's vehicle had an inoperable brake light, and that Officer Higgins did not confirm the same until after he had activated his emergency lights. A police officer's reasonable suspicion that a traffic violation is occurring is a sufficient basis to conduct a stop of a vehicle. *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997). Our Supreme Court noted in *State v. Brotherton* that the "articulable and reasonable suspicion" of a police officer that a traffic violation has occurred is the proper inquiry into the legality of the stop, not whether in fact a violation has occurred. *State v. Brotherton*, 323 S.W.3d 866, 871 (Tenn. 2010). Thus, Officer Higgins' testimony, accredited by the trial court, that he "thought" the Defendant's brake light was inoperable is a sufficient legal basis for the stop. The Defendant's infraction of traveling with a broken brake light was alone sufficient to provide Officer Higgins with the reasonable suspicion necessary to stop the Defendant's vehicle.

Officer Higgins also testified that he witnessed the tires of the Defendant's vehicle cross the lane dividing line three times; the State introduced as an exhibit the video recording of the stop, and it showed the Defendant's tires crossing over the dividing line into the adjacent lane twice. Relying on *State v. Binette*, 33 S.W.3d 215 (Tenn. 2000) and *State v. Smith*, 21 S.W.3d 251 (Tenn. Crim. App. 1999), the Defendant contends that he did not violate a rule of the road or commit any criminal offense in the presence of Officer Higgins, and thus, Officer Higgins did not have probable cause to stop the vehicle. The Defendant argues that there was no evidence of erratic or hazardous driving, and that the two "drifts" of his vehicle into the other lane do not constitute a traffic violation. We first point out that the standard for evaluating the presence of reasonable suspicion is the totality of the circumstances standard, and that "[t]he number of times that a vehicle touches the center line or drifts within in a lane is not dispositive of the issue" of articulable and reasonable

6

suspicion. *Binette*, 33 S.W.3d at 219. In this case, Officer Higgins' testimony supports the conclusion that the Defendant's vehicle did not just drift within the lane, but that the vehicle left its designated lane of traffic and that the driver's side tires entered into the adjacent lane on three different occasions. The video evidence supports this testimony, showing two such occasions.

We conclude that the evidence does not preponderate against the trial court's finding that the Defendant's motion to suppress should be denied. The video evidence and the officer's testimony confirm that the Defendant was driving a vehicle that had an inoperable brake light and that his vehicle veered into the adjacent lane of traffic on three occasions, two of which can be clearly seen on the video. The totality of circumstances support that Officer Higgins had specific articulable facts sufficient to rise to the level of reasonable suspicion as a basis for an investigatory stop of the Defendant's vehicle.

### III. Conclusion

Based on the foregoing reasoning and authorities, we conclude that the trial court did not err when it denied the Defendant's motion to suppress. Accordingly, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE