IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2025

**MILLARD EARL KITZMILLER v. ROY KITZMILLER**

**Appeal from the Chancery Court for Washington County**
**No. 19-CV-0811     John C. Rambo, Chancellor**

_____

**No. E2023-01834-COA-R3-CV**

_____

This is a dispute between two brothers concerning the current ownership of real property their father owned at the time of his death. The plaintiff, contending the brothers are tenants in common because their father died intestate and they are his only heirs, seeks to partition the real property formerly owned by their father. The defendant contends he is the sole owner because he had an oral agreement with his father pursuant to which he would be bequeathed the property upon his father's death in exchange for moving to his father's property to work the farm and care for his father, which he claims to have done in reliance on the agreement. Thus, the defendant asserted a counterclaim by which he seeks specific performance of the oral agreement, a declaration that he is the sole owner of the property, and dismissal of the partition petition. Relying on the theories of equitable estoppel/estoppel *in pais*, the defendant also contends that the plaintiff may not assert a defense based on the statute of frauds, Tennessee Code Annotated § 29-2-101(a)(4). The trial court found that the defendant failed to establish a contract to make a will or devise property, and it also held that the alleged oral agreement was too vague to be enforced, that the defendant failed to fulfill his obligations under the agreement, and the agreement was unenforceable based on the statute of frauds. Thus, the court ruled that the parties jointly own the property as tenants in common, dismissed the defendant's counterclaim and designated the order as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., authored the opinion of the court in which KENNY ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Regina L. Shepherd, Elizabethton, Tennessee, for the appellant, Roy Kitzmiller.

Daniel B. Minor, Kingsport, Tennessee, for the appellee, Millard Earl Kitzmiller.

# OPINION

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Millard Earl Kitzmiller (hereinafter "Millard"), commenced this action against his brother, Roy Kitzmiller (hereinafter "Roy"), seeking the partition of real property their father George Earl Kitzmiller ("George"), owned at the time of his death on December 21, 2017.[1] George died intestate, and Millard and Roy are his sole heirs. Thus, Millard contends that he and Roy own the property at issue as tenants in common. Millard also contends that he and Roy cannot agree on how to utilize or dispose of the property, and that the property cannot be partitioned in kind. Thus, he seeks partition of the property by sale.

In his answer and countercomplaint, Roy alleged that he is the sole owner of the property formerly owned by their father, George. This claim is based on an oral agreement pursuant to which his father promised to bequeath the property to Roy if Roy would move to the property, take care of the property and take care of George for the rest of his life, which Roy claims he did. Thus, Roy seeks both a declaration by the court that he is the sole owner and also a dismissal of Millard's partition petition because Millard has no ownership interest in the property. Roy's claims, as set forth in his counterclaim read as follows:

> [Roy] . . . requests the Court enforce his oral agreement with [George] to leave his real and personal property to [Roy] provided [Roy] would move to [George]'s farm, run the same and take care of [George]. . . .

> Specifically, [Roy] asks the Court to apply the equitable concepts of equitable estoppel, also known as estoppel *in pais*, and the equitable remedy of specific performance in enforcing the oral agreement between [George] and [Roy]. Moreover, [Roy] requests the Court declare [Roy] the sole legal owner of the personal property . . . as well as the real property previously owned by [George]. . . .

In Millard's answer to Roy's counterclaim, Millard insisted that the alleged oral agreement was unenforceable as being barred by the statute of frauds, *see* Tenn. Code Ann. § 29-2-101(a)(4),[2] that the alleged oral agreement was too vague to be enforced, and that Roy failed to fulfill his obligations under the alleged oral agreement.

---

[1] George's estate is currently being administered in the Probate Court of Washington County in Case Number 18 PR 0030.

[2] Real property is considered "one of the most valuable types of property," and any action on a "contract for the sale of lands" is prohibited by the statute "unless the promise or agreement ... [is] in writing and signed by the party to be charged." *See* Tenn. Code Ann. § 29-2-101(a)(4).; *Key v. Renner*, No. E2016-

Based on the nature of the competing claims, the trial court appropriately decided that ownership of the real property must be decided before the partition petition could proceed or be dismissed. Accordingly, a bench trial was held to address the claims asserted by Roy in his counterclaim.

Numerous witnesses testified during the trial of this case in addition to Millard and Roy. The non-party witnesses included friends or acquaintances of George and members of the extended Kitzmiller family.

Samuel Hall, a neighbor and friend of George for several years stated that he grazed cattle on George's farm, the property at issue here, and that he and Roy worked together in the last several years to harvest hay from George's property. When questioned about a will, he stated that George never mentioned having a will or having prepared a deed that would convey his real property to anyone.

Bobbie Rash, an acquaintance and neighbor of George, explained that she would see George on Thursdays at a shop operated by her church. Additionally, as a result of her work in the shop, she also became close friends with Roy's wife, Ann Kitzmiller. She stated that about one month prior to his death, George mentioned that he had a tractor that broke down at his farm and George told her that he was not going to repair the tractor because he had turned those duties over to Roy because he had given everything to Roy and his wife, Ann. She stated, however, that George provided no further explanation of what he meant by that remark and she did not know what George meant by the phrase "give it all." She also said that George never made a comment regarding a will.

Lorene Tester, a neighbor and friend of George, testified that George allowed her to place her trailer home on his property for which George never charged rent. She said she would dine with George three to six times a week at a local restaurant. Ms. Tester stated that George told her on several occasions that if he died tomorrow, everything that he had would go to Roy. George explained to her that if Roy moved to the farm and helped maintain it his house, farm and farm equipment would go to Roy. George also told her that Millard had the same opportunity, but Millard declined. Ms. Tester stated that she has observed Roy and his wife working the farm, cutting hay and fixing fences.

Dwayne McGhee, who had been friends of George for 20 years, stated that during a drive to Knoxville, about five years before his death, George told him that Roy and Ann had been there for him. On other occasions he mentioned that he had turned the farm over to Roy and Ann for them to work it and it was going to be theirs.

01049-COA-R3-CV, 2017 WL 5952915, at *4 (Tenn. Ct. App. Nov. 30, 2017)(citing *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 611 (Tenn. Ct. App. 1990)).

Jimmy McGhee, Dwayne's father, testified similar to his son Dwayne, explaining that on more than one occasion he heard George say that Roy would inherit the farm.

Richard Templeton, a friend of Roy, stated that he helped Roy move to George's farm in 2014. He also heard George say on more than one occasion that he was going to leave the farm to Roy because Roy and Ann were the only ones who would help on the farm.

Roy testified that he moved to George's farm in 2014 to help his father as they had agreed. Three years later, in 2017, Roy retired from his regular employment due to a disability caused by lupus. Nevertheless, Roy testified that there was approximately 20 acres of hay on the farm that he harvested two or three times a year between the months of May to October. Roy testified that he would work the hay 100 hours each month during these months, a statement the court noted as "exaggerated." He also stated that his wife, Ann, would prepare all of George's meals. The trial court, however, found this testimony less than credible because George often ate out during the week with friends at restaurants.

Roy also testified that when he and Ann moved to live in one of George's trailers, they assumed the $350 monthly mortgage associated with the trailer. Roy also claimed to have paid the costs of operating the farm, the taxes, and the mortgage of $150,000 on George's property. However, the court discredited this assertion, noting that records introduced into evidence established that the $150,000 mortgage was retired at George's death with George's money. The court further noted that financial records do not support a conclusion that Roy was paying the costs of the farm and the property taxes. The court also found that documentary evidence indicated that these costs were paid by George and that Roy's claim that he provided the money to George for George to pay was unpersuasive. The court also found that Roy's claim that he spent 100 hours per month working the hay lacked credibility.

Millard testified that he lived at and worked on George's farm for 35 years, from childhood until he left in 2011. He stated he left in 2011 because Roy's son was abusive to George. Millard stated that George made him an offer similar to the offer Roy allegedly received, but he turned it down. George's granddaughter and nephew testified in support of Millard. Several documentary exhibits were admitted into evidence.

Sarah Elizabeth Kemp, George's granddaughter, testified that she considered George a father figure, and that they spoke weekly by phone and visited in person about once a month. She stated that in the last four or five years of his life, she never heard him discuss what would happen to his property when he died.

Terry Parrish, cousin of Roy and Millard and nephew to George, lived in a trailer adjacent to George's land, with a garage extending onto George's property. He testified that George had said he would convey three trailer lots to him for Terry to leave to his

children once the mortgage on the land was paid off. He also testified he was surprised to hear testimony that George was leaving his land to Roy.

Following the conclusion of the bench trial, the court issued its ruling in a written order. The trial court treated one of Roy's claims as a contract to make a will and found that Roy failed to satisfy the statutory requirements of a contract to make a will or devise property. The court also held that the alleged oral agreement was too vague to be enforced, that the defendant failed to fulfill his obligations under the agreement, and the agreement was unenforceable based on the statute of frauds. Thus, the court ruled that the parties jointly own the property as tenants in common, dismissed the defendant's counterclaim, and designated the order as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02.

## ISSUES

The issues as stated by Roy are as follows:

I.      Did the Trial Court err when it failed to enforce Defendant/Appellant's claims for specific performance of an oral agreement.

II.     Did the Trial Court err when it failed to preclude application of the Statute of Frauds by Plaintiff/Appellee on the theories of estoppel *in pais*/equitable estoppel.

## STANDARD OF REVIEW

In cases where the action is "tried upon the facts without a jury," Tennessee Rule of Civil Procedure 52.01 provides that the trial court shall find the facts specially and state separately its conclusions of law and direct the entry of the appropriate judgment.

The trial court's findings of fact are reviewed de novo upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. See Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 523–24; *In re F.R.R., III*, 193 S.W.3d 528, 530. Questions of law, however, are reviewed de novo with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)).

When it comes to live, in-court witnesses, appellate courts afford trial courts considerable deference when reviewing factual findings based on credibility determinations because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the

contrary." *Id.* (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)) (alteration in original).

## ANALYSIS

The trial court treated one of Roy's claims as a contract to make a will. As the trial court correctly noted in its final order, the General Assembly enacted rigid requirements to prove a contract to make a will, citing Tennessee Code Annotated § 32-3-107. The statute provides that such a contract can be established only by:

(1) Provisions of a will stating material provisions of the contract;
(2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
(3) A writing signed by the decedent evidencing the contract.

*Id*. And as our Supreme Court explained in *Junot v. Estate of Gilliam*, 759 S.W.2d 654 (Tenn. 1988), the statute rigidly prescribes the requirements of a contract to make a will, stating: "It prescribes exclusive methods by which a contract to make a will, to revoke a will or to die intestate may be established . . . The provisions [of the statute are] exclusive and mandatory." *Id*. at 658–59.

After making the finding of fact that Roy had not produced a will contract or writing signed by George indicating an agreement that George would write a will leaving all his property to Roy, the trial court concluded that Roy was not entitled to relief based on a theory related to a contract to make a will. Because the evidence in this record fully supports these findings of fact and conclusions of law, we affirm the trial court's ruling on this issue.

We now turn our attention to Roy's claim that he had an oral agreement with George and that he fulfilled his obligations under the oral agreement. In his counterclaim, Roy states:

3. The Deceased promised to give his entire estate, both real and personal property, to Defendant in exchange for Defendant agreeing to move to the real property of the Deceased (in approximately 2013) to live with the Deceased and to assist him with all aspects of his life . . . through and until his death in December 2017, a period of approximately five (5) years.

4. Such assistance included, but was not limited to Defendant managing and running all aspects of the Decedent's farm, as well as assisting the Deceased with all personal needs including but not limited to providing meals, washing clothes, keeping the farm up, tending to all farm equipment, performing all farm work, providing nourishment and care for all livestock, weeding,

mowing and bush hog work around the farm and the residence. Defendant additionally assisted the Deceased with every aspect of his health care such as physician visits; hospital treatment and care; obtaining all prescription medications and insuring the appropriate taking of same, as well as insuring compliance with all doctors' orders.

As for Roy's contention that there was an oral agreement, the trial court found that Roy's witnesses testified to casual comments about the future disposition of his property that did not rise to the level of an enforceable agreement between George and Roy. As the trial court found, "The testimony of the witnesses was unpersuasive that an enforceable agreement existed between George Kitzmiller and Defendant." And the evidence in the record preponderates in favor of this finding because Roy's witnesses only spoke of Geroge's expressions of intent, not an agreement.

The only testimony of an oral agreement or the terms of an agreement came from Roy; however, as Millard correctly argued, Roy's testimony was "bereft of terms essential for the conveyance of real estate."[3] Hence, the court reasoned "the claim for relief relates to real property where specific performance is most often the remedy given the uniqueness of real property, but the agreement or contract Defendant alleges is not clear, definite, complete and free of any suspicion of fraud or [un]fairness." The court found this significant, noting that these were essential elements of a claim for specific performance, citing *GRW Enterprises Inc. v. Davis*, 797 S.W.2d 606, 614 (Tenn. Ct. App. 1990) ("Specific performance is not available unless the contract is clear, definite, complete, and free from any suspicion of fraud or unfairness.").

Moreover, the trial court ruled that Roy did not fully perform his part of the alleged agreement. Roy's testimony, as well as that of some of the other witnesses, reveals that Roy did not fulfill his end of the bargain, as the trial court found:

> Roy Kitzmiller moved to George Kitzmiller's farm in 2014 after starting to help his father in 2013. In 2017, Roy retired from his regular employment. There was approximately 20 acres of hay on the farm that was harvested on two or three occasions between the months of May to October. Roy exaggerated the time it would take to work the hay claiming 100 hours of his and his wife's time per month during hay season.

---

[3] There was no reference to the specific parcels, and George's real property consisted of seven parcels. George's friend, Sam Hall, testified that they comprised seventy to eighty acres, fifteen acres of which included the hayfields Roy worked along with others. There were also multiple residential properties, including those where George, Lorene Tester, Roy and Ann resided.

Roy claimed that his wife would prepare all meals for George and the couple. However, this was not believable because George would often eat during the week with friends at restaurants.

.     .     .

The financial records do not support a conclusion that Roy was paying the costs of the farm and the property taxes associated with it. The documentary evidence indicate much was paid by George Kitzmiller, but Roy's claims were unpersuasive that Roy provided the money to his father.

.     .     .

[Roy] claimed that he was to operate the farm and care for his father and would inherit his father's property in return. However, [Roy] and his father's actions indicate they operated the farm jointly. They both claimed expenses from the farm operation on their tax returns, and the evidence was not persuasive that [Roy]'s money, instead of his father's, was used to pay the property taxes.

The court went onto state:

The evidence was unpersuasive that George Kitzmiller obtained an unconscientious and inequitable benefit that requires equity and fair dealing to preserve or enforce a verbal agreement regarding the disposition of real property. George Kitzmiller lived independently of [Roy]. He allowed [Roy] the use and benefit from his farm. Further, the totality of the evidence was unpersuasive that [Roy] incurred a personal or financial loss or other substantial sacrifice by living near his father. George Kitzmiller continued to care for himself, and it is just as likely that [Roy] benefited as much or more than George Kitzmiller from his arrangement to stay and work at George Kitzmiller's farm.

The evidence in the record does not preponderate against these findings of fact. *See* Tenn. R. App. P. 13(d); *see also Boarman v. Jaynes*, 109 S.W.3d 286, 290 (Tenn. 2003). We also find that these facts, as well as others in the record, support the trial court's finding that Roy did not sufficiently perform his obligations under the alleged agreement, which were identified by Roy in paragraph 4 of his counterclaim.

Thus, as the trial court found, we have determined that Roy has failed to establish that a contract to make a will existed. Further, assuming an oral agreement existed, the

evidence supports the trial court's findings that Roy failed to fully perform his obligations. Accordingly, we affirm the judgment of the trial court.[4]

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Roy Kitzmiller.

_____
FRANK G. CLEMENT, JR., P.J., M.S.

---

[4] These rulings pretermit the other issues raised by Roy as moot.